## The State of Kansas v. Bill Dugan.

1. LIQUOR NUISANCE — *Information* — *Motion to Quash Overruled.* Where a county attorney files an information charging the defendant with keeping a nuisance, and positively verifies the same "as true in substance and in fact," motions to quash the warrant and the information, and a plea in abatement, upon the ground that the information is not properly verified, and that the county attorney has no personal knowledge of the facts alleged therein, are properly overruled.

2. CONVICTION, *When.* A defendant may be convicted of keeping a nuisance upon evidence showing that he is keeper of a "resort," where intoxicating liquors are kept by him for sale as a beverage. (*The State v. Reno*, 41 Kas. 674.)

3. NEW TRIAL — *Separation of Jury.* A mere separation of the jury, after they have retired to consider of their verdict, in trials for misdemeanor, where no injury results, is no cause for a new trial. (Crim. Code, §275.)

*Appeal from Sumner District Court.*

AT the November term, 1892, *Bill Dugan* was convicted of maintaining a common nuisance. He appeals. The opinion states the facts.

*D. N. Caldwell,* and *James Lawrence,* for appellant:

The information is not duly verified. Paragraph 3936, General Statutes of 1889, defines an oath, and the information was attacked at the first opportunity. *The State v. Blackman,* 32 Kas. 615; *The State v. Gleason,* 32 id. 245; *The State v. Clark,* 34 id. 289. See, also, *The State v. Brooks,* 33 Kas. 708; *Jackson v. The State,* 4 id. 150.

The court erred in sustaining the demurrer of the state to the defendant's plea in abatement. The plea is good upon its face and should have been traversed; and if the plea had been traversed as it should have been, it would have been sustained and the prosecution ended there. *The State v. Falk,* 46 Kas. 498, and cases cited.

The court erred in sustaining the motion of the county attorney to indorse the names of other persons as witnesses on the information; and then called two of them, who were sworn on behalf of the state. How can the court say that the jury did not convict on the testimony of these two witnesses? *The State v. Brooks,* 33 Kas. 708; *The State v. Nulty,* 47 id. 259; *The State v. Gleason,* 32 id. 245, and citations.

All of the witnesses testified that they purchased and drank malt of the defendant, and none of them says that it was intoxicating. The defendant himself swears that he sold malt, and this is the only kind of liquor that the evidence shows was sold. Hence, we submit that if the defendant, under this evidence, was not guilty of selling intoxicating liquors, he could not be found guilty of keeping a place where such liquors were drank, and is not guilty of keeping a nuisance, under the evidence in this case.

The motion for a new trial should have been sustained. After the jury had been instructed and had heard the argu-

ments of counsel, and after they had retired to consider upon their verdict, and after they had deliberated thereon and considered the same, they separated, without the knowledge or consent of the defendant.   The defendant never gave his consent, and the record is silent as to whether it was done with the consent of the court. *Sargent v. The State*, 11 Ohio, 472, 473; *Parker v. The State*, 18 id. 88; *The State v. Parrout*, 16 Minn. 178, and citations in these cases; *The State v. Bailey*, 32 Kas. 83; *The State v. McKinney*, 31 id. 570; *Madden v. The State*, 1 id. 340; *Pracht v. Whittridge*, 44 id. 710–715.

The foreman of the jury, while the jury were separated and after the case had been given to them, was seen reading a newspaper which contained articles commenting unfavorably upon the defendant.   It devolves upon the state to show that no injury occurred to the defendant by reason of such separation and by reason of the reading of such newspaper.

*John T. Little*, attorney general, *C. J. Garver*, county attorney, and *John A. Murray*, for The State:

Motions to quash the warrant and information came too late, being filed after the defendant had given recognizance bond. *The State v. Longton*, 35 Kas. 375; *Junction City v. Keeffe*, 40 id. 275.   The verification is in the usual form, and is unquestionably good.   It is sufficient if he has "notice, knowledge or information" of the particular offense charged, the verification being positive, and not on belief.   *The State v. Nulty*, 47 Kas. 259; *The State v. Hescher*, 46 id. 534; *The State v. Coulter*, 40 id. 87.

The jury had a right to convict on the nuisance count on the testimony of witnesses Chambers, Clements, and others, whether their testimony was known to the prosecuting witness when he verified the information or not.   *The State v. Reno*, 41 Kas. 684; *The State v. Estlinbaum*, 47 id. 293. But none of these preliminary motions and rulings thereon can be considered by this court, because not embodied in the bill of exceptions presented on the record.   *The State v. Carr*, 37 Kas. 421.

If defendant did not sell intoxicants, he could not be found guilty of keeping a nuisance!

For complete answer, see *The State v. Reno*, 41 Kas. 684; *The State v. Estlinbaum*, 47 id. 293.

The evidence that the stuff sold by the defendant was intoxicating fully sustains the indictment.

The record does not show that any motion for a new trial, on any statutory ground, was ever made. None is set out, either in the transcript or bill of exceptions. This fact precludes this court from reëxamining this case. *The State v. Ratner*, 44 Kas. 429; *Duigenan v. Claus*, 46 id. 275, and cases cited; *Morse v. Brunswick*, 34 id. 378; *Illingsworth v. Stanley*, 40 id. 61.

The separation of the jury after retiring to deliberate is not a ground for new trial or reversal, unless "without leave of the court." Section 275, Crim. Code. See, also, *The State v. Miller*, 35 Kas. 337.

The opinion of the court was delivered by

HORTON, C. J.: The district court of Sumner county adjourned from the 26th day of October to the 10th day of November, 1892. The county attorney filed in the clerk's office an information charging the defendant, Bill Dugan, in 12 counts, with the unlawful sales of intoxicating liquors, and, in the thirteenth count, with keeping a common nuisance. The defendant was on that day arrested, and gave bond for his appearance at the November term, 1892, of the court, which began on the 15th day of November, 1892, and on the 16th day of November, 1892, he filed motions to quash the warrant and the information, to compel the county attorney to attach to the information the testimony of witnesses examined before him, and, also, a plea in abatement, each of which was overruled and exceptions saved. Thereupon the defendant, being arraigned, stood mute, and a plea of not guilty was entered for him by the court. He was convicted on the nuisance count only, and sentenced to pay a fine of $200, and to be confined 60 days in the county jail.

The motions to quash the warrant and information, and also the plea in abatement, seemed to have been presented upon the grounds that the information was not properly verified; and, further, that the county attorney had no personal knowledge of the facts alleged therein. The information was positively verified by the county attorney. Being thus verified, the court committed no error in overruling the motions and plea, and also in overruling the motion to compel the county attorney to attach to the information the testimony of certain witnesses he had examined. Again, before the motion to set aside the warrant was filed, the defendant had entered into a recognizance for his appearance at a subsequent time, and thereby he waived all irregularity, if any, of the warrant and arrest. (*Junction City v. Keeffe*, 40 Kas. 275.) The defendant was convicted for maintaining a common nuisance only, and the objections to various counts alleging the unlawful sales of intoxicating liquors are not now material. (See, however, *The State v. Schweiter*, 27 Kas. 499.)

1. Liquor nuisance—information—motion to quash overruled.

The court committed no error in permitting the county attorney to indorse the names of additional witnesses upon the information, and then to allow such witnesses to testify. (*The State v. Teissedre*, 30 Kas. 476.) Notwithstanding the defendant was acquitted upon the counts in the information charging him with the unlawful sales of intoxicating liquors, that would not prevent him from being convicted of keeping a nuisance. (Crimes Act, § 392, Gen. Stat. of 1889.) In cases like the present, a showing of the keeping of intoxicating liquors for sale is sufficient, under the statute, to render the place where the liquors are kept a nuisance, and to render the keeper thereof guilty of keeping a nuisance. (*The State v. Reno*, 41 Kas. 674.)

2. Conviction, when.

A mere separation of the jury, after they had retired to consider of their verdict, in trials for misdemeanor, where no injury results, is no cause for a new trial. (*Goode v. The State*, 2 Tex. App. 520; *The State v. Barton*, 19 Mo. 227; *The State v. Igo*, 24 id. 459.) Both

3. New trial—separation of jury.

The State v. Dugan.

D. N. Caldwell and James Lawrence, attorneys for the defendant, testified that the jury were permitted to separate by the court. (Crim. Code, § 275.)

We do not think that the judgment should be reversed upon the showing that one of the jurors had in his possession a newspaper containing certain articles which, it is alleged, might have influenced his verdict. D. N. Caldwell testified, among other things, that

"Q. During the progress of the trial, I will ask you if you saw one of the jurors, Henry Ratekin, reading any, or having in his possession and reading any, paper? A. I saw him have in his possession a certain newspaper.

"Q. Was he apparently reading it? A. He was not, at the time I noticed him.

"Q. What was he doing? A. He had a paper lying in his lap.

"Q. Do you know whether Mr. Ratekin read any part of the contents of that paper? A. No, sir; I do not."

James Lawrence testified:

"Q. Do you know anything about the juror Henry Ratekin, during the trial of that case of the state of Kansas against Wm. Dugan, having in his possession or reading any paper called the ' Weekly Journal,' edited by Tinkham Bros., and published in the city of Wellington? A. Yes, sir; I saw him have such a paper in his hands, apparently reading it, after the case had been given to the jury and before they returned their verdict. It was the day following the day upon which the case had been given to them and they had been permitted to separate, and this was the morning before they convened again.

"Q. Do you know of your own knowledge whether the juror Henry Ratekin read any part of the contents of that paper? A. Nothing further than I have said, that I saw him holding it before him."

This evidence was given orally before the court, and, as against the ruling of the court, we cannot say that the juror actually read any of the articles referred to. (*The State v. Miller*, 35 Kas. 337.)

The verdict of the jury was as follows: "We, the jury im-

paneled and sworn in the above-entitled case, do upon our oaths find the defendant guilty on the thirteenth count, as a nuisance." This verdict was sufficiently certain, as the thirteenth count was referred to, to justify the sentence.

We perceive no misconduct on the part of the prosecution in the closing argument sufficient to cause any substantial complaint. It is doubtful whether many of the matters discussed are sufficiently before us upon a proper bill of exceptions. The bill was allowed and signed by the judge, but refers only to what follows his signature. In order for a sufficient identification, his signature should have been at the end of the bill, and not at the commencement, or the matters following his signature should have been identified as "exhibits A, B, C, etc." (*Railroad Co. v. Wagner,* 19 Kas. 335; *The State v. Gibson,* just decided.)

The judgment will be affirmed.

All the Justices concurring.