## THE STATE OF KANSAS v. CHARLES LINKER.
### No. 231.

1. CONTEMPT—*party charged with, not entitled to jury trial.* A party charged with contempt for the violation of an injunction allowed in a civil proceeding to abate and enjoin a public nuisance, is not of right entitled to a jury trial. *The State, ex rel., v. Durein,* 46 Kan. 695.

2. EVIDENCE EXAMINED—*and held insufficient.* The evidence examined and held insufficient to warrant the finding that the defendant was guilty of the contempt charged.

Appeal from Lincoln District Court. Hon. W. G. Eastland, Judge. Opinion filed January 4, 1897. *Reversed.*

CLARK, J. This is an appeal by Charles Linker from an order of the District Court of Lincoln County assessing against him a fine of fifty dollars for contempt of court, based upon an alleged violation of a temporary injunction, which, pursuant to the provisions of paragraph 2533, General Statutes of 1889, was issued at the commencement of an action brought by the State to abate and enjoin an alleged nuisance. Paragraph 2533 declares that all places where intoxicating liquors are sold or kept for sale in violation of law are common nuisances, and that, upon the judgment of a court having jurisdiction finding such place to be a nuisance under that section, the sheriff, or other proper officer, should be directed to shut up and abate such place, and that the owner or keeper thereof upon conviction should be adjudged guilty of maintaining a common nuisance and be punished by fine and imprisonment. The main contention of the appellant is that the Legislature had no authority to enact the further provision of that section that such nuisance might be perpetually enjoined, thus, as he claims,

THE STATE v. LINKER. 265

Jan. 4, 1897.        Opinion.   Clark, J.          C. Div.

authorizing the issuance of an injunction against the commission of a criminal act; and further, that if such power is vested in the Legislature, in order to sustain the validity of that provision of the statute, the defendant when charged with a violation of such an injunction must, under the Constitution, be accorded the right to have the questions as to his guilt in that matter passed upon by a jury, and that a refusal to award a jury trial in such case amounts to a denial of a right guaranteed to him by the Constitution of the State.

The section under consideration as originally enacted ( Laws 1881, ch. 128, § 13) did not purport to authorize the issuance of an injunction, but did declare all places where intoxicating liquors were illegally sold or kept for illegal sale, to be common nuisances, and authorized proceedings to abate the same, and to punish the owner or keeper thereof. Under the law as it thus stood, an action was instituted by the county attorney in the name of the State for the purpose of perpetually enjoining the further continuance of an illegal liquor saloon. The trial court denied an injunction, and such ruling was sustained by the supreme court in *The State, ex rel., v. Crawford* (28 Kan. 726), where it was held that while under that section such a nuisance might be " shut up and abated," it could not ordinarily be perpetually enjoined by a court of equity; but it was also held that this want of power was not because the keeping of a saloon is a criminal offense, and punishable as such under the laws of this State, but because the statute afforded another complete and adequate remedy. In the opinion, Mr. Justice Valentine said :

" We think the statutory remedy of abatement is ordinarily sufficient remedy for the suppression of

266 THE STATE v. LINKER.

N. Dept. Opinion. Clark, J. 5 Kan. App.

illegal drinking saloons, and that it and the other remedies furnished by the statute are really the only remedies which should ordinarily be resorted to. . . . It must be remembered that the statute does not give the remedy of *injunction* to *restrain* illegal drinking saloons, or to *restrain* public nuisances of any kind. The jurisdiction to grant injunctions in such cases is simply assumed by courts of equity *where no other adequate remedy exists.* Hence where the legislature, after making the thing illegal, and after creating it a nuisance, then gives some other adequate remedy therefor, courts of equity will not assume such jurisdiction, and will not furnish to litigants the extraordinary remedy of injunction.''

Thus, as we think, fairly intimating that had the statute authorized the issuance of an injunction in that proceeding, its validity would have been sustained. After that decision was rendered, this particular section was amended by adding thereto the following provisions:

''The attorney-general, county attorney, or any citizen of the county where such nuisance exists, or is kept, or is maintained, may maintain an action in the name of the state, to abate and perpetually enjoin the same. The injunction shall be granted at the commencement of the action, and no bond shall be required. Any person violating the terms of any injunction granted in such proceedings shall be punished for contempt, by a fine of not less than one hundred nor more than five hundred dollars, and by imprisonment in the county jail not less than thirty days nor more than six months, in the discretion of the court, or judge thereof.'' ¶ 2533, Gen. Stat. 1889.

It will thus be seen that the very remedy which was attempted to be enforced in the Crawford case, and which the Supreme Court there declared a court of equity would not ordinarily sanction, was by that amendment specifically authorized, and the statute as

THE STATE v. LINKER.                    267

Jan. 4, 1897.        Opinion.   Clark, J.              C. Div.

so amended was subsequently construed by our Supreme Court in the case of *The State, ex rel., v. Durein* (46 Kan. 695). In that case the State had obtained a final order of injunction against Durein, forever enjoining him from "using or permitting to be used, a certain building in the city of Topeka as a place where intoxicating liquors are sold, bartered, or given away, or kept for sale, barter or gift, otherwise than by authority of law." More than five years thereafter the defendant was charged with violating that injunction, and upon a hearing being had he was found guilty, and the penalty authorized by the amended paragraph 2533 was imposed. The validity of the statute was sustained, and it was held that "a party charged with contempt for the violation of an injunction is not of right entitled to a jury trial." In the opinion, Mr. Justice Johnston, speaking for the court, said:

"While the proceeding was of a criminal nature, it was really incident to and one of the final steps in the civil action of injunction. He was not entitled to a jury trial in the original proceeding, and neither could he demand a jury as a matter of right to try the charge that he had violated the injunction previously granted. The constitutional provision that 'the right of trial by jury shall be inviolate,' has no application in a summary proceeding of this character. This guaranty does not extend beyond the cases where such right existed at common law; and the right to punish for contempt without the intervention of a jury was a well established rule of the common law."

The only material difference between the Durein case and the one at bar is that Durein violated a perpetual injunction which had been granted after a final hearing, while Linker was found guilty of violating a temporary injunction, which, as authorized by the statute, was issued at the commencement of the action.

The principle involved in each determination is the same. If Durein was not entitled to a jury trial upon a charge of violating a perpetual injunction, we can conceive of no logical reasoning that could be advanced in support of the theory that the court erred in holding that Linker was not entitled to a trial by jury upon the question as to whether he had violated a temporary injunction. The constitutionality of the section of the statute now under consideration was before the Supreme Court of the United States in the case of *Mugler v. Kansas* (123 U. S. 623), and it was there held that the equity power therein conferred to abate a public nuisance without a trial by jury, is in harmony with settled principles of equity jurisprudence; and in the opinion of the court, written by Mr. Justice Harlan, the following language is used: "We are unable to perceive anything in these regulations inconsistent with the constitutional guarantees of liberty and property."

1. Jury not allowed.

Another objection to the validity of the order complained of is that the evidence did not warrant the finding of the court that Linker had violated the temporary injunction. After that writ had been granted and served, Linker continued in business in the building mentioned and described in the petition, and there sold and kept for sale as a beverage certain liquors which were delivered to him in beer cases. There was not a scintilla of evidence introduced tending to show that any intoxicating liquors were sold after the temporary injunction was allowed, nor was there any evidence tending to show that Linker kept any intoxicating liquor at such place for sale, or permitted any persons to resort there for the purpose of drinking intoxicating liquors as a beverage after that date. On September 12, some sixty days after the main pro-

ceeding was instituted, Linker was charged in the police court of Lincoln Center with violating an ordinance of said city, which prohibited the illegal sale of intoxicating liquor, or the keeping of such liquor for illegal sale. At the time of his arrest, under that prosecution, there was in the building heretofore mentioned nearly three cases of liquor, the bulk of which was American hop ale — which the evidence clearly shows was not intoxicating, and which the court so found. The liquor in at least three of the bottles was beer. Some of the American hop ale was in the refrigerator, some in a water bucket, on ice, and three bottles were found "behind the counter, away next to the window." In some of the otherwise "empty cases" were found eleven unlabeled bottles. One of these beer cases was labeled "Pabst Brewing Company," and was marked "Clover," and from it the marshal secured two or three bottles. Three of these eleven bottles were opened and found to contain Pabst beer. Incompetent evidence was also introduced which tended to show, that, at the time the prosecution was commenced in the police court, Linker had in his place of business a Government liquor license; that prior thereto certain beer cases, which had been shipped to Lincoln Center by express to the address of "T. Clover," had been delivered to Linker; that certain alterations in the brands burned into these cases, had been made by some one — presumably the shipper prior to their delivery at Lincoln Center by the express company, but after the date of the commencement of the injunction proceedings; and that Linker had in the building described in the petition, sold American hop ale to be drank on the premises as a beverage. Aside from this testimony, there was no evidence tending to show any violation of

270 THE STATE v. LINKER.

N. Dept. Opinion. Clark, J. 5 Kan. App.

the temporary injunction. Linker had a legal right to sell and keep in the building for sale as a beverage American hop ale, as under the evidence and the findings of the court such liquor was not intoxicating. He also had the right, if he so desired, to keep beer in said building, provided he did not keep the same for an illegal purpose. We think there was a total failure to show that he was guilty of constructive contempt of court.

2. Evidence insufficient.

In view of the conclusion which we have reached, and which necessarily compels a reversal of the judgment, there remains no necessity for passing upon the contention of the appellant, that no authority was vested in the court to impose a fine of fifty dollars for violation of the temporary injunction, as the statute under which this proceeding was instituted and carried on fixes the minimum penalty for such violation at a fine of one hundred dollars and imprisonment in the county jail for thirty days. The court held:

"The Legislature attempted to usurp the functions of the court in saying what shall be the penalty for contempt, and so much of that section which, after denominating the place where intoxicating liquors are kept to be drank on the premises to be a nuisance, attempts to fix the penalty upon proceedings for contempt, is unconstitutional and void. But . .. . this court has a right to punish for a contempt of its order regardless, and without the aid, of that portion of the section prescribing what the penalty shall be."

It might also be suggested that, as at the time the ruling and judgment here complained of were made the defendant was apparently satisfied therewith, as he interposed no objection thereto, and as the punishment pronounced by the court is less than that authorized by the statute, and as until vacated it is binding upon the plaintiff, and a satisfaction thereof

by the defendant would relieve him from further liability to the State by reason of the acts complained of, the substantial rights of the defendant were not prejudiced by the action of the court in imposing a less punishment than authorized by the statute. But as the finding that the defendant was guilty of violating the temporary injunction, is not sustained by the evidence, it follows that the judgment must be reversed.