THE STATE OF KANSAS v. CHOD THOMAS.*

No. 14,736. (86 Pac. 499.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW—*Title to Act Relating to Enjoining Liquor Nuisances.* The title to chapter 338 of the Laws of 1903 sufficiently expresses the subject of the act. The act is not a revivor of, nor an amendment to, section 2463 of the 'General Statutes of 1901 in the sense contemplated by section 16 of article 2 of the constitution (Gen. Stat. 1901, § 134), nor does it contravene any of the provisions thereof.

2. —— *Injunction — Violation — Contempt — Punishment by Legislature.* The penalty provided by chapter 338 of the Laws of 1903 for the punishment of the violation of injunctions in liquor cases is a part of the prohibitory liquor law, and in fixing such penalty the legislature did not intrench upon the inherent power of the courts to punish for contempts.

3. —— *Title to Amending Act Relating to Trial by Jury.* The title of chapter 123 of the Laws of 1901 is not defective upon the ground that it fails to identify the title of a former act, of which certain sections are amended.

4. —— *Right to Trial by Jury—Violation of Injunction— Contempt.* A person charged with the violation of an injunction under the prohibitory liquor law is not entitled to a trial by a jury by virtue of section 10 of the bill of rights. (Gen. Stat. 1901, § 92.)

5. INTOXICATING LIQUORS — *Prosecution for Violating Injunction—Evidence.* On the trial before the court of an accusa-

---

*Pending in the supreme court of the United States on a writ of error allowed October 8, 1906.

The State v. Thomas.

tion by a citizen as prosecutor, charging a person with the violation of an injunction issued under the prohibitory liquor law, the state is not required to show that the prosecutor had personal knowledge of the violation of the injunction, nor to offer evidence to prove that the injunction was granted. The contempt proceedings are a part of the original case, and the court will take judicial notice of the previous steps taken therein.

6. —— *Injunction.* Chapter 334 of the Laws of 1905, amending the general code provisions in reference to injunctions, has no application to injunctions in liquor cases and does not modify or affect chapter 338 of the Laws of 1903.

Appeal from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed July 6, 1906. Affirmed.

*C. C. Coleman,* attorney-general, and *F. S. Jackson,* assistant attorney-general, for The State; *John Marshall,* of counsel.

*Torrance & Bloss, G. H. Buckman,* and *Jackson & Noble,* for appellant.

The opinion of the court was delivered by

PORTER, J.: Chod Thomas was convicted of violating a temporary injunction granted by the district court of Cowley county forbidding the maintenance of a nuisance in keeping a place where intoxicating liquors were sold illegally. He was adjudged to pay a fine of $500 and costs, and sentenced to jail for the period of six months. From that judgment he appeals.

The proceeding in which the temporary injunction was granted was brought in the district court in the name of the state by John Marshall, a citizen of Cowley county, under the authority of chapter 338 of the Laws of 1903. The court denied appellant's motion to quash the accusation in contempt. The claim is made that chapter 338 of the Laws of 1903 is unconstitutional upon several grounds. The act, or so much of

it as is pertinent to the questions raised, reads as follows:

"An act relating to the sale of intoxicating liquors and the suppression of places where such liquors are sold or used or kept for sale or use contrary to law, and supplemental to chapter 232 of the Laws of 1901.

"*Be it enacted by the Legislature of the State of Kansas:*

"SECTION 1. The attorney-general, county attorney, or any citizen of the county where such a nuisance as is defined in section 1, chapter 232, Session Laws of 1901, exists, or is kept, or is maintained, may maintain an action in the name of the state to abate and perpetually enjoin the same. The injunction shall be granted at the commencement of the action, and no bond shall be required. Any person violating the terms of any injunction granted in proceedings shall be punished for contempt by a fine of not less than one hundred nor more than five hundred dollars, and by imprisonment in the county jail not less than thirty days nor more than six months, in the discretion of the court or judge thereof."

This act is said to be in contravention of section 16 of article 2 of the constitution, which is as follows:

"No bill shall contain more than one subject, which shall be clearly expressed in its title, and no law shall be revived or amended, unless the new act contain the entire act revived, or the section or sections amended, and the section or sections so amended shall be repealed." (Gen. Stat. 1901, § 134.)

The first objection is that the title does not contain the title of the former act to which it is said to be supplemental or amendatory. The requirement is satisfied generally if the supplemental act identifies the original act by its title and declares the purpose to supplement the former. (See 1 Lewis's Sutherland, Stat. Const., 2d ed., § 137, and cases cited in note.) The court, speaking of this constitutional provision, said, in *Ash v. Thorp,* 65 Kan. 60, 68 Pac. 1067, that "the mischief against which provision was made was the making of a title so narrow or restricted as not to indicate the subject of the act." (Page 62.) In *The State v. Camp-*

*bell,* 50 Kan. 433, 435, 32 Pac. 35, the words "An act relating to intoxicating liquors" were held sufficiently broad to cover provisions identical with those of the act involved in the present case.

The constitutional requirement was construed in *Philpin v. McCarty, Supt., &c.,* 24 Kan. 393, as intended to prevent the abuse of omnibus legislation, and the doctrine was there laid down as well established that it should not "be enforced in any narrow or technical spirit." (Page 402.) It was designed to prevent the yoking or coupling of something of merit with another matter unworthy and thus making possible the adoption of the unworthy thing. If the title here had consisted only of the words "An act relating to the sale of intoxicating liquors" its subject would have been sufficiently expressed. It consisted of this and much in addition. The reference to the old law is unimportant because the title of the new act is valid and in every way sufficient to meet all the requirements of the constitution. No way can be suggested by which, as the act reads, the members of the legislature could have been misled or deceived in regard to its effect; and it is apparent that the act does not present the slightest obstacle to a full and complete examination and comparison by the public of the provisions of the law. Where a section of an act is amended "so as to read as follows," and the new act sets out in full the words of the act as it will read as amended, there is no violation of this provision.

But it is insisted that the act is a revivor or amendment of section 2463 of the General Statutes of 1901, and violates the above provision of the constitution because it does not contain the entire act revived or amended. It is neither a revivor nor an amendment in the sense contemplated by this provision. It does not purport, as is claimed, to be a revivor of section 2463. It purports to be supplemental to chapter 232 of the Laws of 1901, and the title of the new act is in the

identical language of the title to that chapter. The mere fact that some of the provisions of section 2463 are contained in the new act does not constitute it a revivor of that act. Nothing was actually revived but certain provisions of one of the sections. The rest of the act of which it is now claimed it is a revivor had never been repealed. The confusion which would have resulted from the reenactment of those portions of the entire act which were still in force is an argument against the construction appellant would have placed upon the requirements of this provision of the constitution. Such a construction would defeat the very purpose sought to be accomplished.

Another objection raised is that the reference in the body of the act to a nuisance as defined by section 1 of chapter 232 of the Laws of 1901 is void for uncertainty. Appellant claims that section 7222 of the General Statutes of 1901 is the only authority for the publication of the session laws. That section reads as follows:

"It shall be the duty of the secretary of state to cause the original enrolled laws and joint resolutions passed at each session of the legislature, together with an index containing the titles of the same, to be bound in a volume in a substantial manner; and no other or further record of the official acts of the legislature, so far as relates to acts and joint resolutions, shall be required of such secretary; and he shall cause the title of every such volume, with the session at which the same shall have been passed, to be written or printed on the back thereof."

It is argued that there is no provision in this law for the division of the session laws into chapters, and that the reference in the body of the act in question to a nuisance as defined in section 1 of chapter 232, Laws of 1901, is a reference not authorized by the law and therefore indefinite. Section 7222, *supra,* was enacted as section 24 of chapter 166, Laws of 1879. It is part of the act defining the duties of state officers and is, in substance, a continuation of former enactments. Un-

der the same authority the session laws have always been published, and always the same method of compiling them into chapters has prevailed. It has been uniformly the custom to refer to the session laws by the chapter and section thereof.

A further contention is that the statute under consideration attempts to fix the penalty for contempt and therefore is void as trenching upon the inherent power of the courts, first, for the reason that it obliges the court to punish for contempt regardless of its wishes in the matter, and, second, because it prescribes an arbitrary penalty, leaving to the courts no discretion. The punishment fixed by the statute for violations of this class of injunctions has been upheld by this court in *The State, ex rel., v. Durein,* 46 Kan. 695, 27 Pac. 148. (See, also, *The State v. Linker,* 5 Kan. App. 264, 47 Pac. 570.) We may agree with the premises laid down by appellant—that the district courts, being creatures of the constitution, possess all the inherent rights to punish for contempt, and that the constitution neither expressly nor by implication abridges those rights. The following extract from Rapalje on Contempts, section 11, cited by appellant, is sound and to the point:

"A statute which limits the amount of the fine, or term of imprisonment which the courts may impose, does not deprive them of their power to enforce affirmatively their orders, or to enforce any decree, whether affirmative or otherwise, which may be passed upon the final hearing of a cause."

In *The State v. Morrill,* 16 Ark. 384, it was held that an act of the legislature which attempted to sanction the power of the courts to punish as contempts certain enumerated acts, and no other, was merely declaratory of the common law, and was entitled to respect as an opinion of the coordinate branch of the government, but that the prohibitory clause was not binding upon the courts. In another case which appellant cites (*In*

re *Shortridge,* 99 Cal. 526, 34 Pac. 227, 21 L. R. A. 755, 37 Am. St. Rep. 78) it was said:

"No authority has been found which denies the inherent right of a court, in the absence of a limitation placed upon it by the power which created it, to punish as a contempt an act—whether committed in or out of its presence—which tends to impede, embarrass or obstruct the court in the discharge of its duties. It is a doctrine which is admitted in all its rigor by American courts everywhere, and does not need the support of foreign authorities based upon the fiction that the majesty of the king, represented in the persons of the judges, is always present in the court. It is founded upon the principle—which is coeval with the existence of the courts, and as necessary as the right of self-protection—that it is a necessary incident to the execution of the powers conferred upon the court, and is necessary to maintain its dignity, if not its very existence. It exists independent of statute. The legislative department may regulate the procedure and enlarge the power, but it cannot without trenching upon the constitutional powers of the court and destroying the autonomy of that system of checks and balances, which is one of the chief features of our triple-department form of government, fetter the power itself." (Page 532.)

If appellant were complaining of a penalty imposed by the court in excess of that provided for in the act there might be some occasion for a fuller discussion of the questions raised than is justified under the facts. We hold that the attempt on the part of the legislature to fix the penalty for contempts of court in the violation of injunctions provided for expressly by the legislature for the enforcement of the prohibitory liquor law in no sense trenches upon the inherent power of the courts to punish for contempts of court. The subject of contempt here may be said to affect more seriously the whole people of the state than is the case when an order of the court is violated in some matter in which the public has no interest or concern beyond that which it always has manifested in the preservation of respect

for the dignity and power of the courts. It is a part of the prohibitory liquor law, and, until some violator of an order of the courts complains that a greater punishment has been imposed upon him than that which the statute provides, it will not be necessary to consider seriously the question of the power of the legislature to fix arbitrarily the penalty for such contempts.

The next serious contention is that appellant was entitled to a jury trial, which he demanded. This is bottomed upon the claim that the title to chapter 123 of the Laws of 1901 is invalid. That act amended certain sections of chapter 106 of the Laws of 1897, providing for a jury trial in contempt cases, by inserting a provision that the trial should be by the court or judge. The objection to the validity of the later act is that the title thereto is defective because it fails to identify sufficiently the title of the former act. The title of the act of 1901 reads as follows:

"An act to amend sections 3, 4 and 6 of chapter 106 of the Laws of 1897, relating to contempt of court and proceedings therein."

The title of chapter 106 of the Laws of 1897 is as follows:

"An act to establish trial by jury in cases of contempt of court, and restricting the power of judges' and courts in contempt proceedings."

The same reasons are advanced that were urged against the reference to the term "chapter" in the other statute, and what was said on that subject applies here. An additional objection is made because the title to the act of 1897 is not stated in the same language as in the original. But the particular chapter is referred to, and in a general way the former act does relate to "contempt of court and proceedings therein," and the title of the new act could only be said to be defective by the most technical construction. (*Com. ex rel. v. Taylor et al., Appellants,* 159 Pa. St. 451, 28 Atl. 349.) In *The Borrowdale,* 39 Fed. 376, it was said

that the subject of an original act may be expressed by referring to its subject by apt words, and without reciting its title.

It is insisted as a further argument that, as the amended act becomes a part of the original act, no one can now say what the title to the amended act is. The main purpose and object of the title to an act is to inform the members of the legislature of its scope and effect. That purpose was subserved when the act was adopted. The original act had a sufficient title; the new act has one also sufficient for its purposes when adopted. It would, we think, be a strained construction to destroy a wise and beneficent law and defeat the will of the legislature for the reason that some incongruity can be argued between the title to the original act and that of the act as amended. The appellant was not entitled to a jury trial by virtue of section 10 of the bill of rights. (*The State, ex rel., v. Durein,* 46 Kan. 695, 27 Pac. 148; *The State v. Linker,* 5 Kan. App. 264, 47 Pac. 570; *Mugler v. Kansas,* 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205.)

Appellant's claim that there was error in not requiring the state to show that John Marshall, who made the accusation in the contempt proceedings, had personal knowledge of the offense committed in violation of the injunction has no merit. No objection was made to the jurisdiction of the court to issue the warrant. On the contrary, appellant entered into a recognizance for his appearance in the proceedings. (*The State v. Moseli,* 49 Kan. 142, 30 Pac. 189; *Junction City v. Keeffe,* 40 Kan. 275, 19 Pac. 735.) Aside from this, however, personal knowledge on the part of the prosecutor is never required in prosecutions under the prohibitory law. It has been held sufficient if he have notice or knowledge thereof when the complaint is verified. (*The State v. Dugan,* 52 Kan. 23, 34 Pac. 409; *The State v. Moseli, supra; Junction City v. Keeffe, supra.*) The appellant in this proceeding is

prosecuted upon an accusation charging him with violation of an order of the court. It would be manifestly absurd if a court could not inquire into the question whether its orders were being violated unless some person with actual, personal knowledge should first present the accusation. The provisions of the statute surround the accused with every protection necessary. He is not to suffer punishment until the charge is established to the satisfaction of the court or judge. When that is done, no technical considerations should be permitted to stand in the way of the vindication of the power and authority of the court to enforce its orders.

Still another contention is made of error in that the court took judicial notice of the fact that it had issued a temporary injunction against appellant. It is claimed that this proceeding is criminal in its nature, and an entirely new and distinct proceeding from that in which the temporary injunction was issued; that it was necessary for the state to prove that there was a temporary injunction granted, and, in effect, against the appellant. We agree with appellant that the proceeding is in its nature criminal, but do not agree with him in the other contention. The proceeding is a part of the original case and the court properly took judicial notice of the previous order granted in that case. (*The State, ex rel., v. Durein,* 46 Kan. 695, 27 Pac. 148.)

The ingenuity of counsel is not exhausted by the objections already considered, and it is vigorously maintained that the petition in the injunction case should have been verified either by the county attorney or the attorney-general. This contention likewise calls for the construction of various statutes. It is claimed that chapter 334 of the Laws of 1905, which provides that the petition in an action in the name of the state to enjoin a common nuisance shall be verified by the county attorney or the attorney-general, applies to injunctions in liquor cases and modifies chapter 338 of the

24—74 KAN.

Laws of 1903. From 1901 to 1903 there was no special provision of the prohibitory liquor law relating to the granting of injunctions, for the reason that by the enactment of what is known as the Hurrel law the injunction feature of the prohibitory law was inadvertently repealed. (*The State v. Estep,* 66 Kan. 416, 71 Pac. 857.) In 1903 the legislature, by the enactment of chapter 338, the title and effect of which we have just discussed, restored the injunction, leaving the law substantially as it had stood since its first enactment in 1881. It had been construed a number of times by this court, and it is clear that it was the intention of the legislature to give to the private citizen the authority to prosecute and maintain actions of this kind without let or hindrance from either the county attorney or the attorney-general. In the Estep case, *supra,* which may be said to have called to the attention of the legislature the inadvertent repeal of this provision, it was expressly held that the remedy which had been repealed applied only to this class of nuisances. (See, also, *Express Co. v. The State,* 68 Kan. 818, 75 Pac. 1134.) The amendment, therefore, of the general code provision for injunctions, which has been in force since 1885 and which has been held to apply to a different class of injunctions, did not alter or affect the remedy for the abatement of nuisances under the prohibitory law as reestablished by the act of 1903.

The principle is firmly established that where a law has been settled by judicial construction, is then repealed, and afterward the same law in substance is reenacted, the legislature adopts the construction previously given to it by the courts. (*Barnewall v. Murrell,* 108 Ala. 366, 18 South. 831; 26 A. & E. Encycl. of L. 650.)

We have considered the other contentions of appellant but find none which merits special mention. Finding no grounds for the claims of error in the rulings of the court, the judgment is affirmed.

All the Justices concurring.