## SCHWARTZ v. UNITED STATES.

**(Circuit Court of Appeals, Fourth Circuit. September 8, 1914.)**

### No. 1255.

1. CONTEMPT (§ 54*)—PROCEEDINGS FOR PUNISHMENT—FORMAL REQUISITES.

There is no fixed formula for contempt proceedings, and technical accuracy is not required. It is sufficient if the offense is set out so that the defendant is clearly informed of the charges against him, and whether a criminal or civil contempt is alleged; and this is to be determined by examination of the entire record.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 143–149; Dec. Dig. § 54.*]

2. INJUNCTION (§ 230*)—VIOLATION—CONTEMPT—JURISDICTION AND POWER OF COURT.

Where, in a civil suit of which the court had jurisdiction, charges of contempt were made against defendant for violation of an injunction issued therein, and he appeared and pleaded, and, after the proceeding had been transferred to the criminal docket, procured a suspension of the proceeding on his voluntary promise to obey the injunction, he cannot attack a subsequent judgment for contempt against him in the criminal proceeding, after a hearing, on the ground of the invalidity of the injunction order.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 502–516; Dec. Dig. § 230.*]

3. CONTEMPT (§ 66*)—CRIMINAL PROCEEDINGS—REVIEW IN APPELLATE COURT.

While, in a case of criminal contempt, the trial court must be convinced of the guilt of the accused beyond a reasonable doubt, a finding of such fact, supported by competent evidence, cannot be reviewed by an appellate court.

[Ed. Note.—For other cases, see Contempt, Cent. Dig. §§ 213–215, 223–237; Dec. Dig. § 66.*]

4. CRIMINAL LAW (§ 304*)—CRIMINAL CONTEMPT—EVIDENCE.

A proceeding for criminal contempt growing out of a civil suit is collateral to it, and the court may take judicial notice in the trial of the contempt proceeding of all orders made in the civil cause.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 700–717, 2951½; Dec. Dig. § 304.*]

In Error to the District Court of the United States for the Northern District of West Virginia, at Philippi; Alston G. Dayton, Judge.

Proceeding for criminal contempt in the name of the United States against Meyer Schwartz. From a judgment of conviction, defendant brings error. Affirmed.

Joseph R. Curl and John C. Palmer, Jr., both of Wheeling, W. Va. (A. M. Belcher, of Charleston, W. Va., on the brief), for plaintiff in error.

Stuart W. Walker, U. S. Atty., of Martinsburg, W. Va., and John A. Howard, of Wheeling, W. Va., for the United States.

Before PRITCHARD and WOODS, Circuit Judges.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WOODS, Circuit Judge. The question to be decided in this cause is whether the assignments of error present any valid reason for the reversal of a judgment of the District Court by which Meyer Schwartz was held to be guilty of contempt and sentenced to imprisonment for 60 days.

In the case of West Virginia-Pittsburg Coal Co. v. John P. White and others the District Judge granted a temporary restraining order, dated September 29, 1913, directed to the defendants, as officers of the United Mine Workers 'of America and as individuals, "and all persons combining and conspiring with the said designated persons and all other persons whomsoever." The tenor of the order was to enjoin interference with plaintiff's business by using threats, force, intimidation, or persuasion to induce its employés to break their contracts or leave their work, or by using like means to induce any person to refuse to accept employment with plaintiff, and to enjoin trespassing on plaintiff's premises for the purposes above indicated. The charge against Schwartz seems to fall under the italicized portion of the following provision of the order:

"From interfering in any manner whatsoever, either by threats, violence, intimidation, persuasion, or entreaty, with any person in the employ of plaintiff who has contracted with and is in the actual service of plaintiff, to entice or induce him to quit the service of plaintiff, or to fail or refuse to perform his duties under his contract of employment, and *from ordering, aiding, directing, assisting, or abetting, in any manner whatsoever, any person or persons to commit any or either of the acts aforesaid.*"

By petition filed November 11, 1913, the plaintiff alleged:

"Meyer Schwartz, who keeps a store near your petitioner's Locust Grove mine, after being advised of the terms and provisions of the said restraining order, has continued to furnish a meeting place for your petitioner's striking employés and to assist in inducing your petitioner's striking employés to remain away from their work, in violation of their respective contracts of employment."

The affidavit of Virgin, attached to the petition as a part of it, alleges service of the order on Schwartz, his acts of furnishing a place for the striking miners to hold their meetings as near as possible to the mines, and of providing a conveyance and a driver for two of the officers of the United Mine Workers to go over the plaintiff's property to a meeting of the strikers.

A rule to show cause was issued, and the hearing fixed for December 1, 1913. On that day the court, on motion of plaintiff, made an order naming a number of persons, including Schwartz, who had appeared and submitted themselves to the court in response to the rule to show cause, and reciting its opinion that the petition and affidavits showed a criminal contempt, and directing that the proceedings be entitled "United States v. Van Bittner" and others, Meyer Schwartz being named as one of the defendants, that the cause be docketed on the law side of the court on the criminal docket, that the petition and affidavits and the orders relating to the contempt proceedings be filed as a part of the record in the criminal case, and that the contempt pro-

ceedings "shall not be further prosecuted in this suit in equity, but shall be prosecuted on the law side of the court as a criminal contempt case."

After hearing the arguments, the court on the following day made an order refusing to dismiss the bill, and granting a temporary injunction identical in language with that of the restraining order. At the same time an order was made staying further proceedings until the further order of the court.

By petition filed on January 17, 1914, West Virginia-Pittsburg Coal Company represented to the court, by petition and affidavits, that, although the defendants had appeared in open court on December 2, 1913, and promised to desist from the acts charged as contempt, and to comply strictly with the order of injunction, they nevertheless had continued to violate the order in many particulars set out. An attachment was issued against Schwartz, and he was required to show cause why he should not be punished for the alleged contempt. At the hearing on January 27, 1914, the court, after denying the motion of defendant's counsel to quash the petition, and after hearing the evidence, adjudged the defendant guilty of contempt and sentenced him to imprisonment for 60 days.

[1.] Although out of logical order, for the sake of clearness, we consider first the error assigned that the charge against Schwartz should have been dismissed for indefiniteness. It is true that Schwartz is not specifically charged by name in this last petition and the affidavits attached; yet, reading them in connection with the first petition and the affidavits thereto attached, it appears that the only charge in the last petition which involves him is that of maintaining at petitioner's mine, near Colliers, tents occupied by a number of strike agitators who "live in the most disorderly manner, drinking, fighting, shooting, and disturbing your petitioner's employés who live near by." This definite charge is against all the defendants, and was notice to Schwartz of the accusation he had to meet.

But, aside from that, the original petition and affidavits, as we have pointed out, contained distinct and definite charges against him, and the order suspending his trial on these charges did not affect his liability to answer them. Under that order making the United States a party, transferring the cause to the criminal docket, and directing the original petition and affidavits to be filed in the criminal proceeding, the charges and specifications contained in the original papers stand against the defendant as the basis of the criminal proceedings. There is no fixed formula for contempt proceedings, and technical accuracy is not required. It is sufficient if the offense is set out, so that the defendant is clearly informed of the charges against him and whether a criminal or civil contempt is alleged; and this is to be determined by examination of the entire record. Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; Aaron v. United States, 155 Fed. 833, 84 C. C. A. 67; United States v. Huff (D. C.) 206 Fed. 700.

Objection was not made that Schwartz was not a party to the pro-

ceedings and was not bound by the order of injunction. On the contrary, the defendant appeared in the cause on December 1, 1913, and submitted himself to the jurisdiction of the court. Breach of a promise made to the court did not subject him to contempt proceedings; but the appearance and the promise precluded the defendant from averring that he was not a party bound by the order. Examination of the record excludes even the slightest doubt that the defendant was fully advised of the charge against him, appeared before the court and submitted himself to its order, and procured a suspension of the proceedings by a voluntary promise to obey the injunction. If the charge had been originally for civil contempt, all proceedings of that character were discontinued by the order, and the defendant was fully advised that he was called on to meet a charge of criminal contempt, and on that charge he was tried and fully heard. This being so, it would be not only adopting the extreme technicality formerly required in the criminal procedure, but extending it to the point of absurdity, to sustain the objections to the form and method of the procedure in this contempt case.

There is nothing in the record indicating that defendant's counsel made a motion to require the charges to be made more definite and certain, and hence there is no ground for the assignment of error on that point.

Neither the bill of exceptions nor the assignments of error point out what portion of the evidence should have been excluded as irrelevant. The first bill of exceptions is merely a copy of the evidence, and no objection to any of it appears to have been made. The assignment of error on this point has, therefore, no basis in the record.

[2] There is no force in the position that the judgment should be reversed because the court exceeded its power in adjudging the defendant guilty of contempt for furnishing a meeting place for organizers of the United Mine Workers of America and others, and thus aided them in inducing by force, threats, intimidation, and persuasion the employés of West Virginia-Pittsburg Coal Company to quit work. It is true that the judgment for contempt, as well as the order of injunction, will be set aside on writ of error, when the trial court had no jurisdiction to make the order of injunction. In re Rowland, 104 U. S. 604, 26 L. Ed. 861; In re Fisk, 113 U. S. 713, 5 Sup. Ct. 724, 28 L. Ed. 1117; In re Sawyer, 124 U. S. 200, 8 Sup. Ct. 482, 31 L. Ed. 402; United States v. Shipp, 203 U. S. 563, 27 Sup. Ct. 165, 51 L. Ed. 319, 8 Ann. Cas. 265. But that condition is not presented here. The court had jurisdiction of the subject-matter—the protection of the West Virginia-Pittsburg Coal Company in its property rights—and of the defendant, who had appeared in the cause to answer the charge that he had unlawfully interfered with those rights.

The defendant appeared in answer to a rule to show cause, pleaded not guilty of the contempt charged, and asked and obtained time to produce his witnesses, without questioning the power of the court to make the order. He, along with others, excepted to the order transferring the cause to the criminal docket and making the papers

the basis of a charge of criminal contempt; but, so far from prosecuting this exception, he waived it by appearing before the court, submitting himself to its order, and promising obedience, and thus procuring a suspension of the proceedings. Under these conditions it cannot be said by the defendant that the order of injunction and the order to show cause, acquiesced in by him and not appealed from, is a nullity, because it may have been erroneous in embracing acts which should not have been held to be unlawful aid to those who were charged with unlawful interference with the business of the West Virginia-Pittsburg Coal Company:

"If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery." Gompers v. Bucks Store & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

[3] The well-established principle is that in a case of criminal contempt the trial court must be convinced of the guilt of the accused beyond a reasonable doubt, but when there is evidence tending to show guilt the finding of fact by the trial court cannot be reviewed by this court. Bessette v. Conkey Co., 194 U. S. 338, 24 Sup. Ct 665, 48 L. Ed. 997. In this case there was evidence that the defendant rented his land to the officials of the United Mine Workers of America and others, who were taking means forbidden by the injunction to induce the employés of West Virginia-Pittsburg Coal Company to quit work, not only with the knowledge that it would be used, but with the purpose that it should be used, as a base for their operations. There was also evidence that he furnished conveyances to some of the same persons for a like purpose. This was evidence tending to show the "aiding and assisting" by the defendant which the court had forbidden.

[4] It is true that the record does not show that the stay order and the order of injunction were formally introduced in evidence; but throughout the taking of the testimony they were referred to by the witnesses, including the defendant, as if they had been introduced, and were so treated by counsel in the examination. Besides, it does not appear that the omission was made the basis of a motion to dismiss, or in any way called to the attention of the court. To reverse the judgment on this ground would be carrying technicality to the point of extreme attenuation. There is authority for the proposition that the criminal contempt is so far distinct from the original civil proceedings that the order of injunction must be formally introduced. State v. Hudson County Electric Co., 61 N. J. Law, 114, 38 Atl. 818. But we think this rule too technical. The better view is that, as one proceeding grows out of the other and is collateral to it, the court will take judicial notice in the trial of the latter of all orders made in the former. State v. Jones, 20 Wash. 576, 56 Pac. 369; State v. Thomas, 74 Kan. 360, 86 Pac. 499; State v. Porter, 76 Kan. 411, 91 Pac. 1073, 13 L. R. A. (N. S.) 462; Haaren v. Mould, 144 Iowa, 296, 122 N. W. 921, 24 L. R. A. (N. S.) 404.

The judgment against the defendant was suspended, and it was ordered that he be admitted to bail pending the disposition of the cause by this court. Hence there is no foundation for the assignment of error alleging that the suspension of the sentence and bail were denied.

This court in a unanimous opinion (John Mitchell et al. v. Hitchman Coal & Coke Co., 214 Fed. 685, 131 C. C. A. 425) has expressed its views fully on the limits to which an injunction of this sort should go. It was there held that it is an invasion of the rights of the citizen to enjoin the promotion of a labor union by persuasion and other peaceable and lawful means. Had this order of injunction been brought up for review by the defendant, it would have been modified in his behalf. But it is too late to allege before this court that the injunction was too broad when the defendant appeared in court to answer the charge of violating the injunction, and, instead of bringing the order up for review, waived all objections to it by submitting himself and promising obedience to it.

Affirmed