## SCORIC v. UNITED STATES.

### (Circuit Court of Appeals, Fourth Circuit. September 8, 1914.)

### No. 1256.

**1. INJUNCTION (§ 230*)—VIOLATION—PROCEEDINGS FOR PUNISHMENT—SUFFICIENCY OF CHARGES.**

Charges of criminal contempt in violating an injunction *held* sufficiently specific to sustain a judgment of conviction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 502–516; Dec. Dig. § 230.*]

**2. INJUNCTION (§ 230*)—VIOLATION—PROCEEDINGS FOR PUNISHMENT—FORMAL REQUISITES.**

The fact that through a clerical error the name of a defendant, charged with others with contempt for violation of an injunction, was omitted from an order entered on the petition transferring the proceeding to the criminal docket for trial, does not invalidate a judgment against him therein, where he appeared, pleaded, and contested the case.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 502–516; Dec. Dig. § 230.*]

**3. INJUNCTION (§ 231*)—VIOLATION—PROCEEDINGS FOR PUNISHMENT—REVIEW IN APPELLATE COURT.**

The question of the validity of an order granting an injunction, not appealed from, cannot be raised in an appellate court on review of a subsequent judgment for contempt for violation of the injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 517; Dec. Dig. § 231.*]

In Error to the District Court of the United States for the Northern District of West Virginia, at Philippi; Alston G. Dayton, Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Proceedings for criminal contempt in the name of the United States against Paul Scoric. From a judgment of conviction, defendant brings error. Affirmed.

John C. Palmer, Jr., and Joseph R. Curl, both of Wheeling, W. Va. (A. M. Belcher, of Charleston, W. Va., on the brief), for plaintiff in error.

Stuart W. Walker, U. S. Atty., of Martinsburg, W. Va., and John A. Howard, of Wheeling, W. Va., for the United States.

Before PRITCHARD and WOODS, Circuit Judges.

WOODS, Circuit Judge. Most of the assigned errors of procedure, and in the judgment and sentence against the defendant for contempt by reason of his disobedience of an order of injunction of the District Court, have been discussed and disposed of by the opinion in the like case of Meyer Schwartz v. United States, 217 Fed. 866, 133 C. C. A. 576, filed herewith, involving the charge of contempt in disobedience of the same orders. On some points, however, the facts are not precisely the same.

[1] 1. We think the charges against the defendant were sufficiently definite. The petition of November 11, 1913, alleges:

"On October 15, 1913, Van Bittner, James Oates, Joseph July, Thomas Smith, Richard Webb, and Paul Scoric organized and held a meeting near your petitioner's Locust Grove mine, at which they paid certain sums of money to each of your petitioner's striking employés for the purpose of inducing them to remain away from work and continue on strike. At said meeting they made inflammatory speeches, entreated, persuaded, urged, and threatened your petitioner's employés, who are on a strike, to continue to remain away from work, and to induce those who are working to join the strike."

In the affidavit of Virgin, attached to the petition as a part of it, it is alleged:

"Van Bittner, James Oates, Joseph July, Secundo Coliffee, Tom Smith, Richard Webb, and Paul Scoric have, in violation of the restraining order above mentioned, advised, urged, and persuaded our miners to continue on a strike and to refuse to resume working under their contracts with our company. They have also held meetings as near to our mines as they could get without actually trespassing on the company's property, in which some of them, with others, have made inflammatory speeches, urging and persuading our employés to continue the strike and to continue in violation of their contracts to refuse to work in our mines. * * * I had also told Jos. July, Tom Smith, Richard Webb, Paul Scoric, and Meyer Schwartz about the restraining order, for the purpose of warning them against violating it, before they participated in the meeting above described. * * * Richard Webb is acting as secretary of the local union of the miners, has furnished them a place for holding the meeting, and is constantly active in encouraging, persuading, and urging the strikers to continue on a strike and to refuse to work, and in inducing those who are working to quit work in violation of their respective contracts of employment. Paul Scoric, Tom Smith, and Jos. July are actively engaged in doing the same thing."

Still more specific are the following charges contained in the affidavit of Virgin, attached to the second and supplemental petition of January 17, 1914:

"That some of said parties, James Oates, Tom Smith, and Paul Scoric, against whom a rule was issued by said court, and who, among others, promised to remove the two tents on the county road immediately in front of some of the company's houses, have not removed said tents, but still maintain them as headquarters for striking miners of the said West Virginia-Pittsburg Coal Company, over which place said James Oates, Tom Smith, and Paul Scoric, and their associates, Dan R. Brown, Carl Neidhoffer, Paul Wetter, W. H. Thompson, William Bailey, Sheaky Heaky, and Carls Schmidt, frequently met with other of the striking miners and create disturbance of the peace, and some of them go upon the company's grounds and threaten violence to the officers of the company and do violence to employés of the company. * * * That on the morning of Saturday, January 3, 1914, about 11 o'clock a. m. the said Paul Scoric and Carl Neidhoffer assaulted John Mathia and Hector Gobi on the company's grounds, while they were working for the said company, the said Scoric saying, among other things, to Mathia, 'I will kill you,' and threw a half brick at Mathia's head, the said Neidhoffer striking the said Hector Gobi with a large club, at the same time threatening to do him great bodily harm."

2. If there was an order suspending the proceeding against Scoric until the further order of the court, it does not appear in the record. But the original proceeding had not been dismissed and was still pending when the supplemental petition was filed on January 17, 1914. The charges under this second petition, which he was also required to answer, were contained in an affidavit made January 5, 1914. It is therefore obvious that the scope of the court's inquiry properly embraced all charges of specific acts of disobedience of its order done between the date of the temporary restraining order and the affidavit made on January 5, 1914.

3. It is true that Scoric denied all these charges; but it is not seriously disputed that there was evidence from other witnesses, which might well be accepted as true by the District Court, supporting some of the charges of contempt. This being so, this court can give no relief against the finding of the trial court. Bessette v. Conkey Co., 194 U. S. 338, 24 Sup. Ct. 665, 48 L. Ed. 997.

[2] 4. The point was made for the first time at the oral argument in this court that the proceeding must be dismissed because the name of Paul Scoric does not appear in the order of December 1, 1913, setting out that the petition and affidavits showed a case of criminal contempt, and ordering the case to be prosecuted in the name of the United States against Van Bittner and others named, and docketed as a criminal cause on the law side of the court. It is perfectly clear from the record that the omission was merely a clerical error, which in no wise prejudiced the defendant. He was one of the parties distinctly charged by name in the original petition with specific acts of contempt. He appeared by attorney in the cause on November 25, 1913, in response to the order of November 11, 1913, pleaded not guilty to the charge, and was allowed further time to produce his witnesses. He appeared again on December 2, 1913, submitted himself to the court, and promised to obey the order. He was distinctly charged by name with definite acts of contempt in the second petition. In response to the attachment issued against him he again appeared in person and by attorney on January 27, 1914, and upon denial of his motion to quash

the petition pleaded not guilty. Under these circumstances the clerical mistake of omitting the name of the defendant from the order of December 1st cannot avail; for the point is altogether technical. The principle was thus applied in Holmgren v. United States, 217 U. S. 509, 30 Sup. Ct. 588, 54 L. Ed. 861, 19 Ann. Cas. 778, where the name of a person other than the defendant was used in an indictment for perjury:

"It is further urged that the indictment in the third count thereof does not properly charge an offense against Holmgren. It is true that in the third count it appears that the name of Frank Werta, the alien, was written by mistake for that of Gustav Holmgren, in averring that the witness was duly and properly sworn; but this count also contains the averment that 'the said Gustav Holmgren, having taken such oath to testify as aforesaid, did then and there willfully,' etc., and 'contrary to the said oath testify in substance and to the effect,' etc. This objection does not appear to have been specifically pointed out in the demurrer, or otherwise taken advantage of upon the trial. In this proceeding it is too late to urge such objections to a matter of form, unless it is apparent that it affected the substantial rights of the accused. Rev. Stat. § 1025; Connors v. United States, 158 U. S. 408 [15 Sup. Ct. 951, 39 L. Ed. 1033]; Armour Packing Co. v. United States, 209 U. S. 56, 84 [28 Sup. Ct. 428, 52 L. Ed. 681]."

[3] This court in a unanimous opinion (John Mitchell et al. v. Hitchman Coal & Coke Co., 214 Fed. 685, 131 C. C. A. 425) has expressed its views fully on the limits to which an injunction of this sort should go. It was there held that it is an invasion of the rights of the citizen to enjoin the promotion of a labor union by persuasion and other peaceable and lawful means. Had this order of injunction been brought up for review by the defendant, it would have been modified in his behalf. But it is too late to allege before this court that the injunction was too broad, when the defendant appeared in court to answer the charge of violating the injunction, and, instead of bringing the order up for review, waived all objections to it by submitting himself and promising obedience to it.

Affirmed.