THE STATE OF KANSAS V. JACK PORTER AND JOHN CUMMINGS.

No. 15,238.   (91 Pac. 1073.)

SYLLABUS BY THE COURT.

1. INTOXICATING LIQUORS — *Nuisance Perpetually Enjoined — Limitation on the Use of the Property.* A decree of a district court, which is of record in the office of the clerk of such court in the county where rendered and which enjoins the defendants in the suit and all other persons whomsoever from keeping or maintaining a nuisance, as defined by the prohibitory liquor law of the state, in a certain building upon certain described real estate in the county, is a restriction, in the nature of an encumbrance, upon the use of such building, of which all subsequent owners, tenants or occupants thereof must take notice at their peril.

2. ———— *Actual Notice by Subsequent Occupant—Contempt.* In the prosecution of a subsequent tenant or occupant of such building for contempt by the violation of such decree no actual knowledge or notice of such order of the court is requisite to conviction.

Appeal from Montgomery district court; THOMAS J. FLANNELLY, judge. Opinion filed October 5, 1907. Affirmed.

STATEMENT.

ON December 16, 1904, in a suit then pending in the district court of Montgomery county in which the state of Kansas, on the relation of Anna F. Fruits, was plaintiff, and John Hebrank, Fay Lovejoy, Ed Heckman and Harry Robinson were defendants, a judgment was rendered perpetually enjoining the defendants, "their agents, employees, successors and assigns, and all persons associating, combining and conspiring with them, and all other persons whomsoever," from keeping and maintaining a nuisance in a certain brick and frame building on lot 16, block 42, in the city of Independence, in such county and state.

Thereafter, on July 21, 1906, the county attorney of Montgomery county, by affidavit filed in the suit,

charged John Hebrank and the appellants with a violation of the injunction. · On the presentation of this affidavit to the judge of the court the judge ordered an attachment to be issued for the arrest of the persons charged, and also ordered the county attorney to file a formal accusation against them, which was done.

The appellants were arrested and appeared with their attorney before the judge at chambers, and, after a motion to quash the complaint had been denied, answered thereto. A hearing was had, and appellants were adjudged guilty of contempt of the order of injunction, and to pay a fine of $500 each and be confined in the county jail for six months, and to pay the costs of the proceeding, including the sum of $100 as a fee to the county attorney. The appellants bring the case here for review.

*Fred S. Jackson,* attorney-general, *J. R. Charlton,* county attorney, for The State; *Thomas E. Wagstaff,* of counsel.

*T. H. Stanford,* for appellants.

The opinion of the court was delivered by

SMITH, J.: The principal contentions of the appellants have been decided adversely to them in this court: The proceeding to punish for a violation of the order of injunction is a part of the injunction suit and not another independent action; the accusation need not possess the formalities of an indictment or information; the court will take judicial notice of the order of injunction. (*The State v. Thomas,* 74 Kan. 360, 86 Pac. 499; *The State v. Forner,* 75 Kan. 836, 89 Pac. 674.)

It is hardly necessary to say that in the exercise of a jurisdiction conferred upon him by statute a judge at chambers will take judicial notice of all the facts which the same judge in exercising the same jurisdiction, sitting as a court, would take. A judge at chambers, then, will take judicial notice of his former orders made when he sat as a court. The judge has not the

general jurisdiction of the court, but in the exercise of powers expressly conferred by the constitution or statutes of the state his jurisdiction is as ample in everything necessarily incident to the exercise thereof as is the jurisdiction of the court in the exercise of like powers. It was therefore unnecessary formally to plead or to prove the issuance of the order of injunction. (*The State v. Thomas,* 74 Kan. 360, 86 Pac. 499.)

It is contended that, as the appellants were not parties to the injunction suit, they could not be convicted of a violation of the order therein unless they were proved to have had notice or actual knowledge thereof.

The appellants were charged, jointly with John Hebrank, who was the owner of the building and who was a party to the injunction suit, with a violation of the order therein. And, although it appears Hebrank was not arrested or tried for the contempt, there is probably sufficient circumstantial evidence to justify a finding that appellants had knowledge of the order and conspired with Hebrank to evade and violate it. Upon what evidence or presumption the judge based his decision we are not advised by the record. No evidence that they had actual knowledge of the order was necessary. They admit they had possession of the building in which, but a few months before, the owner, his codefendants "and all other persons whomsoever" were enjoined from maintaining just such a nuisance as appellants were maintaining. In wilfully embarking upon an unlawful business they might well be presumed to have scanned every possible source of danger and to have not overlooked so public a proceeding as the injunction suit. It is more probable that they thought they had cunningly evaded it. It matters not: The proceedings of the courts for the maintenance of order and the enforcement of law are not thus to be trifled with. The decree of injunction was against the defendants in that suit, and in a sense was *ad rem*—against the property, or rather against a certain illegal use of the property. It cut off perpetually the use of the property for

any of the purposes which the prohibitory liquor law of this state denounces as a nuisance. Thereafter not only the parties to that suit but all persons using the property for any of such unlawful purposes did so at their peril. The judgment is a limitation upon the use of the property of which all subsequent owners or occupants must take notice. It was well said in *Silvers v. Traverse*, 82 Iowa, 52, 47 N. W. 888, 11 L. R. A. 804:

"The decree was against plaintiff's lessor, who was the defendant in the suit. It affected his right and interest in the property; that is, it limited and cut off his power to use the property for the unlawful keeping and sale of intoxicating liquors. The decree was a restriction upon the use of the property which followed it as a burden, and, as it were, an encumbrance. Surely the plaintiff, in taking the property, took it subject to this restriction and burden. In our opinion, these conclusions are based upon familiar doctrines applicable to all actions and proceedings in the courts. If the rule we announce be not recognized, the attempt to enforce injunctions to abate nuisances of all kinds would be vain. The defendant perpetrating the nuisance could wholly defeat the law by leasing or transferring the property to one who had no notice thereof. He could begin anew the perpetration, and could only be enjoined by a new action, and when so enjoined he could in a like manner transfer the property, and so on indefinitely defeating the law, to the scandal of public justice and the oppression of the people." (Page 56.)

The only other question it is deemed necessary especially to notice is the allowance of $100 as attorney's fees for the county attorney without evidence being introduced as to the value of the services rendered by him. Where attorney's fees are allowed to be taxed as costs, as in the statute under which this suit was brought, it would seem the better practice for the state to offer evidence of the extent and value of the services performed, that the defendant might cross-examine the witnesses and offer rebuttal evidence. In this case, however, it is apparent that the judge was fully conversant with the extent of the services, and he will be presumed to have known the value thereof. (*Noftzger*

*v. Moffett,* 63 Kan. 354, 65 Pac. 670; *Bentley v. Brown,* 37 Kan. 14, 14 Pac. 434.)· Evidence, however, was offered of the judgment of injunction rendered by the court, and all the papers prepared by the county attorney in the subsequent proceedings for contempt were brought to the attention of the judge at chambers by the application for the attachment of appellants, the motion to quash the accusation, etc. The examination of the witnesses and all the details of the trial also transpired before the judge. The papers prepared by the county attorney were the affidavit and application for the attachment and the accusation upon which the trial was had. The sufficiency of each of these documents was challenged by appellants' counsel and was defended by the county attorney. The attention of the judge was thereby challenged to these matters, as it must also have been to the response of the county attorney to various other motions and objections made by appellants. It also appears from the record that the county attorney actively represented the state in the introduction of all the evidence and the examination of all the witnesses produced on the trial. The record justifies the statement that all the services rendered by the county attorney were before the judge and could not have escaped his attention, and, as we before remarked, he is presumed to have known the value thereof. (*Noftzger v. Moffett, supra.*) No evidence is requisite of facts which transpire in the presence of the court.

In many lawsuits the more burdensome part of the lawyer's duties are discharged out of court and beyond the observation of the judge, and in such cases evidence would be required thereof in court. In this case it is evident that his own senses and observation were the best witnesses possible to the judge, and this court is able to say from the record that under the circumstances the sum allowed as fees was not unreasonable for the services rendered.

The judgment is affirmed.