No. 28,905.

THE STATE OF KANSAS, *Appellee,* v. CHARLES RICHARDSON et al.; EMMA RICHARDSON et al., *Appellants.*

(278 Pac. 752.)

Opinion filed July 6, 1929.

*P. L. Courtright,* of Independence, for the appellants.

*William A. Smith,* attorney-general, *R. P. Mason,* assistant attorney-general, *Warren B. Grant,* county attorney, *T. F. Varner,* city attorney, and *Charles D. Shukers,* of Independence, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This case is a sequel to that of *State, ex rel., v. Richardson et al.,* 117 Kan. 138, 230 Pac. 68, wherein this court affirmed a decree of the district court of Montgomery county adjudging cer-

tain real property of defendants Charles Richardson and Emma Richardson (Nos. 412-412½ East Main street, on lot 11, block 46, in the city of Independence) to be a nuisance because liquor selling, drinking, gambling and prostitution had been permitted on the premises. The judgment of the district court was rendered on April 30, 1924, and enjoined all such criminal misconduct in the future. Part of that judgment decreed—

"That the defendants and each of them, and their tenants, servants, agents, employees, successors, assigns and all other persons be, and they are hereby forever restrained and enjoined from having, keeping, selling or manufacturing intoxicating liquors of any kind or character on the premises hereinbefore described, or from congregating or permitting persons to congregate thereon for the purpose of drinking intoxicating liquors, or having intoxicating liquors in their possession."

On June 3, 1927, the state filed a motion for a writ of abatement and padlock order, alleging that at divers times after the granting of the injunction of April 30, 1924, and particularly since May 28, 1927, the property covered by the injunction had continued to be a place where intoxicating liquors were unlawfully sold and where persons were permitted to resort for the purpose of drinking intoxicating liquors, and that persons were permitted to keep such liquors in their possession on the premises in violation of law.

Defendants Charles and Emma Richardson filed objections to the jurisdiction of the court, and denied the power of the court to "change or add to the original judgment" or to issue any padlock order, and raised the point that the facts alleged in the state's motion stated no cause of action, and invoked the fifth and fourteenth amendments to the federal constitution and the bill of rights of the Kansas constitution against the objects sought to be accomplished in plaintiff's motion.

On June 4, 1927, the plaintiff's motion for the writ of abatement and padlock order and defendants' objections thereto came on for hearing. The court heard what evidence the parties had to offer, and took the cause under advisement "with leave to either party to introduce additional evidence thereon." Some time afterwards the state renewed its motion for a writ of abatement and padlock order, setting up substantially the same facts as those contained in its motion of June 3, with the additional allegation that the liquor nuisance of which it had already complained was still being maintained on the premises. To this motion defendants filed objections similar to those urged against the state's motion of June 3.

On December 2, 1927, the state presented additional evidence in support of its motion, and "the court not being fully advised in the premises, doth take said motion under advisement and continued the hearing thereof."

On December 28, 1928, Charles Richardson died [intestate] leaving as his heirs his wife, Emma Richardson, codefendant in this proceeding, and his two daughters, Lorena Thomas and Willie Evans. On January 27, 1929, notice of the pendency of the proceedings was served on the daughters, Lorena and Willie, and they were apprised that further evidence in support of the state's motion would be presented on February 2, 1929; and on that date the state and defendant Emma Richardson presented additional evidence in the cause. Emma Richardson renewed her objections to the proceedings, and demurred to the state's evidence. Lorena Thomas made what her counsel chose to characterize as a special appearance and objected on the ground that the court was without jurisdiction, that there had been no revivorship of the proceeding following the death of Charles Richardson, and that the state's motion did not state facts sufficient to show that she had any knowledge of or had consented to the use of the property in any unlawful way. She also invoked the federal constitution and the Kansas bill of rights against the order prayed for by the state. The judgment record then proceeds thus:

"And thereupon the court, being now fully advised in the premises, doth find that the motion of the plaintiff should be sustained; that the judgment of permanent injunction of said court heretofore rendered in said cause on the 30th day of April, 1924, has been violated in that intoxicating liquors have been kept for sale and sold on said premises, and persons have been permitted to resort thereto for the purpose of drinking and possessing intoxicating liquors in violation of the law; that in order to protect the judgment of the court and prevent the violation of law on said premises, a writ of abatement should issue herein commanding the sheriff of said county to take possession of said premises, eject the defendants and all other persons therefrom, and padlock the buildings thereon until such time as the court shall be satisfied that the law will not again be violated thereon."

Judgment was entered accordingly and the defendants appeal, assigning and arguing various errors which we will consider in the order of their presentation.

It is first suggested that the court had no authority to issue a padlock order for the violation of an injunction in case of a liquor nuisance unless some provision to that effect was incorporated in

the original judgment rendered years previously. Applied to this case, that would have required that in the judgment of April 30, 1924, enjoining the use of defendants' premises as a liquor and gambling nuisance and as a house of prostitution, some express provision should have been inserted to the effect that if the court's injunction were disregarded the premises might be padlocked to insure its enforcement. The mere statement of such a contention should be sufficient refutation of its soundness. It is not required in any decree that the court shall anticipate that its judgment will be flouted. The court need not commit itelf in advance as to how it will deal with that sort of situation. The statute contemplates that the court will not make any such order until the necessity therefor shall arise. It reads:

"Upon its being shown to any court or judge thereof that any injunction granted by such court or judge under the provisions of chapter 338 of the Laws of 1903 is being violated, such court or judge may make an order commanding forthwith the enforcement of such injunction by such measures and means as in the judgment of the judge, or court, may be necessary to prevent further violation of such injunction." (R. S. 21-2132.)

It is next suggested that the proceedings abated by the death of Charles Richardson. But it already is settled law in this jurisdiction that proceedings *in rem* for the suppression of liquor nuisances at the instance of the state do not abate because of the death of a defendant. (*State v. Dixon,* 90 Kan. 594, 135 Pac. 356; 47 L. R. A., n. s., 905. See, also, *State, ex rel., v. Durein,* 46 Kan. 695, 27 Pac. 148; *State v. Porter,* 76 Kan. 411, 91 Pac. 1073.)

Defendants' next contention is that the state should have instituted contempt proceedings for the violation of the injunction rather than by this proceeding to abate the nuisance by a padlock order. But the state was not limited to such redress as contempt proceedings might furnish. While any and all persons who flouted the injunction by the sale or possession of liquor on the premises or by resorting thereto for the purpose of such drinking would be guilty of contempt of the court's injunction, punishment for such contempt would be by proceedings *in personam,* and that might be an endless job. By a padlock order, however, or other means which a writ of abatement might properly authorize, the paramount purpose of the injunction can be effectively accomplished. As Blackstone put it, in writing of the suppression of public and private nuisances—

". . . The founders of the law of England . . . provided two other

actions—the *assize of nuisance* and the writ of *quod permittal prosterner—* which not only give the plaintiff satisfaction for his injury past, but also strike at the root and remove the cause itself, the nuisance that occasioned the injury. . . . Both these actions . . . are now out of use, and have given way to the action on the case; . . . and the effect will be much the same unless a man has a very obstinate as well as an ill-natured neighbour who had rather continue to pay damages than remove his nuisance. For in such a case recourse must at last be had to the old and sure remedies, which will effectually conquer the defendant's perverseness, by sending the sheriff with the *posse comitatus,* or power of the county, to level it." (2 Cooley's Blackstone, Book III, 220-222.)

Our own statute, although having more regard for economic values, is broad enough for all practical purposes, and the padlock order was well within its letter and spirit.

It is next broached rather than urged that it was necessary to charge the defendants with "negligence, knowledge, permission or consent" before the padlock order could be issued. We cannot approve such proposition. An injunction forbidding the maintenance of a liquor nuisance on premises is a restriction, in the nature of an encumbrance upon the use of the property, and runs with the land or tenement, and binds everybody then or thereafter concerned therewith. (*State v. Porter,* 76 Kan. 411, 91 Pac. 1073; note in 15 A. L. R. 386-401.)

Defendants next raise a point of constitutional law against the validity of R. S. 21-2132. They argue that in the grant of power to the court to enforce its injunction "by such measures and means as, in the judgment of the judge or court, may be necessary to prevent further violation of such injunction," there is a tying of legislative and judicial power in one department of government. On the contrary, the statute is merely a declaration of the power which courts of general jurisdiction have always possessed—the power to make their decrees respected and to have their judgments obeyed. Without that power, or if its exercise were unduly abridged or conditioned by legislative fiat, the usefulness of the courts would be destroyed. (15 C. J. 732; 13 C. J. 46 *et seq.*) Of course the measures and means to be taken to enforce the injunctive orders of a court must be reasonable; the court must exercise discretion; that discretion must not be abused. Measures for the enforcement of an injunction may be imagined which would neither fall within the spirit of the statute nor within the scope of judicial discretion; but the particular measure undertaken to enforce the court's injunction

in this case—that the defendants and their tenants be ousted and the premises padlocked by the sheriff until the proprietors shall satisfy the court that the law will not be violated thereon—is not only reasonable but apparently necessary to secure obedience to the injunction, and it certainly is not subject to any constitutional objection. To the fear expressed by counsel of the danger "that some spotters or persons with ulterior motives would persuade an occupant or stranger to carry a bottle of liquor onto the premises" with all the drastic consequences which might possibly fall on innocent and law-abiding proprietors, we can only reply that we live in a world of possible dangers, including the one here suggested; but such possibilities cannot serve to overthrow the judgment under review.

Touching the questioned sufficiency of the evidence to support the judgment, a careful perusal of the record quite effectively disposes of that point, but it would serve no good purpose to extend this already too lengthy opinion to quote excerpts of the testimony which did support it. (*State v. Rose,* 124 Kan. 37, 257 Pac. 731.)

The judgment is affirmed.