## No. 14,000.

UNITED GILPIN CORPORATION ET AL. *v.* WILMORE ET AL.
(.. P. [2d] ..)

Decided May, 3, 1937.

454

Mr. CHARLES R. ENOS, Mr. THEODORE A. CHISHOLM, Mr. JOSEPH L. MORRATO, for plaintiffs in error.

Mr. HARRY C. DAVIS, Mr. STANLEY T. WALLBANK, Mr. EDWARD Z. KLAHR, on the brief, for defendants in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PRIOR to August 21, 1931, Chain O'Mines, Incorporated, was operating an ore reduction mill in Gilpin county, Colorado, the tailings from which were carried into Clear Creek and finally into ditches carrying water from the creek upon the lands of water appropriators down the stream to their injury. Through an action in the district court, the Chain O'Mines was partially enjoined from discharging all of the mill tailings so as to prevent pollution of the stream. To this judgment, the company assigned error, and by our decision in the case of *Wilmore v. Chain O'Mines,* 96 Colo. 319, 44 P. (2d) 1024, the injunction was made complete and permanent against the pollution of the water of Clear Creek and its tributaries. Thereafter the district court on April 12, 1935, pursuant to our decision, issued the formal writ, the pertinent part of which is as follows: "That defendant Chain O'Mines, Inc., its agents, employees, representatives, successors, and assigns, are hereby fully and permanently enjoined and restrained from discharging slimes or tailings into Clear Creek or into any tributary thereof in such manner that the said slimes or tailings will be carried into and pollute the water of Clear Creek or any tributary thereof, to such an extent that either from such acts alone or in conjunction with those of

others the same will cause impairment with attendant injury to the use of the water that the plaintiffs are entitled to make."

Liens that had accrued against the Chain O'Mines property were foreclosed through court proceedings and pursuant to the court decree, and at a sheriff's sale held thereunder, some of the property was purchased by one Lewison and the Public Service Company of Colorado, lien claimants, who made a contract of sale thereof to the United Gilpin Corporation, plaintiff in error. The latter went into possession of the mining property and the mill about May 1, 1935, and has operated same since that date. The individual plaintiff in error, Thibodeaux, was its vice president and in charge of the company's operation. In May, 1936, defendants in error, by a verified petition filed in the district court, sought the issuance of a contempt citation against plaintiffs in error for violation of the terms of the injunction hereinabove set out. The petition charged respondents with depositing large amounts of tailings so "that the same enter the water of Clear Creek and cause serious and irreparable impairment with great attendant injury to the use of the water of Clear Creek" that defendants in error were entitled to make, and that in so violating the terms of the injunction, plaintiffs in error acted with full knowledge of the terms of the injunction and with intent to violate the same. Citation issued on the petition. Respondents answered, and among other things denied that the injunction was in force and effect as to either of them; further that they had made effort to impound the tailings, and finally, they challenged the jurisdiction of the court. On the hearing the undisputed evidence established that through the operation of the reduction mill of respondent corporation, plaintiff in error, 31,000 tons of tailings escaped into the tributaries of Clear Creek during the period from May 1, 1935, to May 1, 1936, with deleterious effect on, and irreparable injury to, the water of Clear Creek. The respondents, plaintiffs in error, made no

effort to refute this evidence, were found guilty of contempt and fined $500, and adjudged to pay the costs of the proceeding. By the writ of error herein they seek a reversal of the judgment.

 In proceedings of this nature, we inquire only to ascertain whether or not the trial court had jurisdiction of the offense of which complaint is made, and of the alleged contemnors. As to the sufficiency of the evidence to justify the penalty imposed, we have no concern if the trial court had such jurisdiction. The respondents, plaintiffs in error, by their answer seek to avoid the consequences of their acts by pleading an attempt to prevent the disposition of the mill tailings into the water of Clear Creek. This is a most positive admission of knowledge of the terms of the existing injunctive order, and is a matter solely for the consideration of the trial court in mitigation.

That the trial court had jurisdiction of the offense cannot be questioned. It follows, therefore, that if its judgment is to stand, jurisdiction of the respondents also was necessary.

 That the existing injunctive order is against, and in restraint of, ''agents, employees, representatives, *successors* and assigns,'' of Chain O'Mines, appears with certainty upon the face of the writ. Do the plaintiffs in error fall within a class therein enumerated and restrained? The circumstances leading to the possession and operation of the Chain O'Mines property by plaintiffs in error, lead to no other conclusion than that they are direct successors in the operation of the property, with full knowledge of the existing burdens thereon. The history of this litigation leading to the injunctive order, clearly discloses the intent to enjoin the doing of a thing, more directly than the restraint of that thing being done by any particular party or parties. In effect, it is a restriction or restraint running with future operations of the property involved. The very essence of the orig-

inal injunction suit was the dealing with a future, rather than an existing cause of action. Respondents, plaintiffs in error, apparently acquired the proprietorship of the property in a lawful manner, but did so subsequent to, and with notice of, the existing injunctive order. They succeeded to the right of operation of the property involved burdened with its restrictions. The foreclosure sale and transfer of the property did not revoke or annul the restraining order of the court, and if respondents' contention could be entertained, it would have the effect of providing means for the immediate evasion of valid and existing orders of court, render them impotent and leave their orders effective only so far as the immediate litigants might choose to abide. All members of the public are bound to observe the restrictions of an injunctive order known to be in existence, and issued by a court within its jurisdiction. Any person, though a stranger to the proceedings who, with knowledge of the existence of an injunctive writ and its terms, violates the order or assists others in so doing, is by such interference, defying the administration of justice and is subject to the resulting perils and penalties.

To hold that the injunction in this case did not reach the property involved would be to nullify the paramount purpose of the order. If a court has the power to order premises padlocked, to further insure against an unlawful or forbidden use—which it unquestionably has—it has equal power to stop the operation of property to insure that it will not be operated in a forbidden way, or to the injury of others, until such a time as it may be satisfied that its orders will be obeyed.

We thus are led to the irresistible conclusion that respondents, plaintiffs in error, as "successors," are included in the specified class of those enjoined by the order herein involved. Consequently any violation thereof was at their peril and subjected them to the penalty imposed by the court of which they now complain.

Judgment affirmed.

Mr. Chief Justice Burke and Mr. Justice Knous concur.