No. 34,719

THE STATE OF KANSAS, ex rel. TOM HARLEY, County Attorney, *Appellant*, v. (LINK RAMSEY, DAN GRANT, *Defendants*) H. W. CLINE and E. J. CHILCOAT, *Appellees*.

(100 P. 2d 637)

Opinion filed April 6, 1940.

*Jay S. Parker*, attorney general, *Tom Harley*, county attorney, *Robert H. Nelson, Harold A. Zelinkoff, Grey L. Dresie, J. Ashford Manka* and *Dean L. Lachenmyer*, deputy county attorneys, for the appellant.

*Harold Irwin*, of Wichita, for the appellees.

The opinion of the court was delivered by

DAWSON, C. J.: This is an appeal from a judgment sustaining defendants' demurrer to an accusation for contempt of a permanent injunction against certain premises in Sedgwick county which had been judicially declared to be a common nuisance on account of the illegal sale of liquors and the practice of gambling which had been conducted thereat.

On December 14, 1937, a temporary injunction had been issued at the instance of the state against certain described premises known as the "Little River Inn," enjoining its owners, manager, operator, and their agents, servants and employees, from maintaining a liquor and gambling nuisance therein. At the final hearing on January 18, 1938, the premises were declared to be a common nuisance which should be abated, and the named defendants, L. T. Ramsey and C. J. Clemmons, and their agents, servants, employees, successors, tenants

and assignees should be perpetually enjoined and restrained from maintaining said nuisance and enjoined from permitting people to congregate therein for the purpose of drinking intoxicating liquors or gambling. The court found that when the temporary injunction was granted the alleged nuisance existed and the temporary injunction was made permanent.

Some months later, on October 28, 1939, about 11 o'clock p. m., the county attorney and some of his deputies raided the premises and found a lot of gambling paraphernalia, a gaming table, dice, chips, croupier's rake, cash book, packages of dice which had come by United States mail addressed to H. W. Cline, a record of social security payments in behalf of E. J. Chilcoat, showing the date of his employment, September 4, 1939, and of deductions made and collected from him on weekly salaries paid.

The county attorney filed an affidavit of the pertinent facts, and an order of court was issued for L. T. Ramsey (Link Ramsey), Dan Grant, H. W. Cline and E. J. Chilcoat to show cause why they should not be punished for contempt of the injunction issued on January 18, 1938. This was followed by a formal accusation in contempt to which the defendants, Cline and Chilcoat, answered with a general denial.

. The state's evidence showed that the present defendants, Cline and Chilcoat, were actively engaged in running the gambling nuisance at the time it was visited by the county attorney and his deputies. A number of patrons of the premises were present, some drinking, some gambling; about fifteen or twenty persons were standing around the gaming table. To the inquiry of an assistant county attorney "Who is running the game?" Chilcoat said, "I am."

A demurrer in behalf of Cline and Chilcoat was lodged against the state's evidence because it failed to show that they had personal knowledge or notice that the premises were under permanent injunction as a liquor and gambling nuisance. This demurrer was sustained. The trial court's opinion dealing with the subject is worth quoting:

"The Court: Link Ramsey, Dan Grant, H. W. Cline and E. J. Chilcoat are the four that are charged in the accusation. E. J. Chilcoat and H. W. Cline, of course, cannot be heard to say that they didn't know that they were violating the law; they do know that. The court is of the opinion that they cannot be presumed to know that they are violating an order of the court. Everyone is presumed to know the law; the court is not of the opinion that that presumption extends to an order of the court. There is some reason why.

For instance, the defendant Dan Grant may be charged with 'notice,' that is, he was a tenant, and the law presumes that he looked into the title of the landlord. The action pending is a matter of public record and the law presumes that he looked into the record, and if he did so he found this injunction. The defendant Link Ramsey, of course, knew the order because he was a party of the original action. Dan Grant cannot be heard to say that he did not know about the order because it pertained to the title of the property which he was occupying as a tenant. The defendants E. J. Chilcoat and H. W. Cline will be discharged. The defendant Dan Grant and Link Ramsey each will be found guilty of contempt of court and will be sentenced to be fined $100 each and to serve thirty days in the county jail each, and to pay the costs of the action.

"[Counsel for the state]: . . . Is it the court's ruling that it is a matter of law that the defendants Cline and Chilcoat are not in contempt of court? . . .

"The Court: The court is holding that the state has not made any showing that the defendant E. J. Chilcoat and the defendant H. W. Cline had any knowledge, any legal knowledge, of the existence of this injunction.

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"[Council for the state]: Now, if I am permitted to say another word, with reference to Ramsey and Grant, there are, as we say, an injunction—two injunctions connected all in this particular one injunction, a liquor injunction and a gambling injunction, and I would like to inquire, Is the court directing the contempt of court, finding them in contempt of court on either one of those or simply on both of them?

"The Court: On both of them. They had liquor in violation of the law and the court finds that they were operating gambling games there in violation of law."

Judgment was entered accordingly and the state brings the matter here for review.

Our statutes authorizing the suppression of liquor and gambling nuisances by injunction and abatement and the plenary authority of our district courts to enforce their injunctive decrees and to punish those who violate them are so familiar that they need not be set out here. As to liquor nuisance injunctions and their infringement, see particularly G. S. 1935, 21-2118, 21-2130, et seq. As to gambling nuisances and their suppression by injunction, see G. S. 1935, 21-915, 21-918, et seq.

Counsel for defendants cite respectable authorities from other jurisdictions to the effect that persons not parties to an injunction proceeding, particularly if they have had no notice of the injunctive decree, cannot be held guilty of contempt for violating it. To this effect were First Evangelist Baptist Church v. Smith, 153 La. 171, 95 So. 594; State, ex rel. Lindsley, v. Grady, 114 Wash. 692, 195

Pac. 1049, 15 A. L. R. 383; *Harris v. Hutchinson, Judge,* 160 Ia. 149, 140 N. W. 830; *Garrigan v. United States,* 163 Fed. 16; *Galligan v. United States,* 282 Fed. 606; *Hill v. United States,* 33 F. 2d 489.

Doubtless the cases just cited were in accord with the statutes of their several jurisdictions; and indeed we might hold in accord with them insofar as an injunction is merely a personal judgment, and that a person not a party to the injunction proceedings and having no notice of the decree could not or should not be held guilty of willful contempt thereof. (However, the authorities are not altogether uniform on this subject. See note in 15 A. L. R. 391, *et seq.*)

But in the matter of dealing effectively with the evils of liquor and gambling this state, under statutory authority, has blazed a trail of its own, and has developed two lines of remedial procedure and practice pertaining thereto—one in personam and the other in rem. Under our law, when a place where the intoxicating-liquor law is habitually violated, or where the business of gambling is carried on, it is by statute declared to be a nuisance and may be suppressed, enjoined or abated as such. (*State v. Richardson,* 128 Kan. 627, 278 Pac. 752.) And the injunctive decree prohibiting such use of the premises is an encumbrance which runs with the land, of which everybody must take notice. This is the doctrine of our familiar case, *State v. Porter,* 76 Kan. 411, 91 Pac. 1073, 13 L. R. A., n. s., 462, decided over thirty years ago. Recent cases recognizing the same principle were *State v. Jones,* 149 Kan. 766, 89 P. 2d 878; and *State, ex rel., v. Dick,* 150 Kan. 230, 92 P. 2d 92. In the latter case it was said:

"It must be remembered that the primary purpose of the injunction proceeding, insofar as real estate is concerned, is to prohibit its use as a liquor nuisance, and the mere fact the owner did not know of the wrongful use would not defeat the action. To successfully maintain the action against the real estate it is not necessary to prove actual sales. (See *State v. Lewis,* 63 Kan. 265, 65 Pac. 258, for a more complete discussion.)" (p. 236.)

See, also, *State, ex rel., v. City of Coffeyville,* 90 Kan. 164, 133 Pac. 711.

Recurring to the statute which declares that a place where gambling is conducted is declared to be a nuisance and prescribing punishment for contempt of an injunction suppressing it, the specific language of the statute says:

". . . any person (not merely any person having notice) violating the terms of an injunction granted in any such proceedings, shall be punished for contempt. . . ." (G. S. 1935, 21-918.)

In view of our own decisions over a period of thirty years it will not do to weaken the means which the legislature has provided for the enforcement of the law against places which have been adjudicated to be nuisances, nor to permit persons to flout the law and the court's decree pertaining thereto on the excuse that they had no personal notice or knowledge of the injunctive encumbrance on the premises where their nefarious crimes were being perpetrated.

The judgment of the district court is reversed and the cause remanded for further proceedings not inconsistent with the opinion of this court.

Reversed and remanded.