No. 36,540

J. W. FREY (VIOLA FAIRBANKS and WILLIAM FREY, *Appellants*) v. HENRY T. WILLEY and BELLE WILLEY, his wife, *Appellees*.

(166 P. 2d 659)

Opinion filed March 9, 1946.

*Ward D. Martin,* of Topeka, argued the cause, and *A. Harry Crane* and *Harry Snyder, Jr.,* were on the briefs for the appellants.

*Walter T. Chaney,* of Topeka, argued the cause for the appellees.

The opinion of the court was delivered by

PARKER, J.: This is an appeal from a judgment sustaining a motion to quash an order citing the defendants to appear before the district court and show cause why they should not be held in contempt. Although they are not in dispute a brief statement of the facts is required in order to fully understand the issue presented.

On the 26th day of April, 1935, in an action then pending in the district court of Shawnee county, one J. W. Frey, who owned a farm which was situated between the Kansas or Kaw river on the south and land to the north owned by the defendants, Henry T. and Belle Willey, obtained a permanent and perpetual injunction against such defendants prohibiting them, their heirs, grantees and assigns, from digging a ditch through an elevation or bench extending in an easterly and westerly direction across the south side of their land and which if constructed would cause flood waters accumulating thereon to flow contrary to the natural course of drainage over, upon and across, such plaintiff's farm. Subsequently, J. W. Frey died and his son, William Frey, and his daughter, Viola Fairbanks, became the legal owners of the real property owned by him at the time of the commencement of the injunction proceeding. After his death the Willeys renewed their attempts to dig a ditch through the elevation or bench. On the 27th day of August, 1945, and in the original action, the son and daughter filed a pleading, which they designated an application for citation for contempt, charging Mr. and Mrs. Willey with violation of the terms and requirements of the permanent injunction. Thereafter the citation order to which we have heretofore referred was issued and served upon them. When they appeared in response thereto the Willeys filed a motion to quash such order upon the ground the persons initiating the contempt proceeding were not proper parties plaintiff. The district court's ruling in sustaining that motion resulted in this appeal by William Frey and Viola Fairbanks.

At the outset it should be stated that in this jurisdiction there are three recognized methods of procedure in indirect contempt proceedings.

One section of our statute, G. S. 1935, 20-1204, deals with in-

direct contempts in general including that class of contempt cases properly classified as criminal contempt. In part it reads:

"*That upon* the return of an officer on process or *an affidavit duly filed showing any person guilty of indirect contempt,* a writ of attachment or other lawful process may issue, and such person be arrested and brought before the court or judge in chambers; . . ." (Emphasis supplied.)

Another, G. S. 1935, 60-1116, pertains solely to contempt proceedings with respect to disobedience of injunctions. It outlines the procedure to be followed in cases of that character. Pertinent portions thereof are:

"An injunction granted by a judge may be enforced as the act of the court. Disobedience of any injunction may be punished as a contempt, by the court or any judge who might have granted it in vacation. *An attachment may be issued* by the court or judge, *upon being satisfied, by affidavit,* of the breach of the injunction, against the party guilty of the same, . . ." (Emphasis supplied.)

The most recent legislative expression on the subject is chapter 148 of the Laws of 1935 (G. S. 1935, 20-1207). It relates to service of citations for contempt in civil cases and reads:

"*When it is duly made to appear* to the district court, or judge thereof, that *an order made* by such court or judge *in a civil action, the violation of which order is punishable by contempt, has been violated, the court* or judge *may issue a citation for the party charged* with the violation of such order, and such citation when so issued may be directed to and served by the sheriff of the county in which such citation was issued or of any county in the state; and such sheriff, or any of them, or their undersheriffs or deputies, may execute the citation in the manner therein directed and may bring the party charged with violating the order before the court or judge issuing the citation to be dealt with as the nature of the case and the facts pertaining thereto warrant." (Emphasis supplied.)

We are not informed by appellants as to the section of the statute on which they rely as justifying the procedure followed by them in the initiation of this contempt proceeding. In fact the record indicates a commingling of the procedure outlined by each of such sections. Be that as it may, since it is not contended the accusation was insufficient in form or that the procedure followed was not in harmony with statutory requirements, we pass any issues of that character which might have been subjects of dispute without comment or decision and proceed directly to a determination of the question of whether the motion to quash the citation order was properly sustained. However, before doing so it should first be said an examination of the record discloses that under our de-

cisions (*Smith v. Clothier*, 113 Kan. 47, 213 Pac. 1071; *Holloway v. Water Co.*, 100 Kan. 414, 420, 167 Pac. 265; *Barton v. Barton*, 99 Kan. 727, 728, 163 Pac. 179), the issue here involved springs not from a criminal but from a purely civil contempt proceeding. Likewise, that such proceeding—and for that matter contempt proceedings in general where violation of injunction mandates are involved irrespective of whether they are civil or criminal in nature—is not an independent action but a part of the original injunction suit and properly instituted and triable therein. (*Barton v. Barton*, supra; *State v. Porter*, 76 Kan. 411, 412, 91 Pac. 1073; *State v. Plamondon*, 75 Kan. 269, 272, 89 Pac. 23; *State v. Thomas*, 74 Kan. 360, 369, 86 Pac. 499; *State, ex rel., v. Durein*, 46 Kan. 695, 696, 27 Pac. 148 and *State v. Cutler*, 13 Kan. 131.) Also, that once the parties accused of contempt are properly before the court the merits of the original suit are not involved and the sole question for determination is whether the permanent injunction order and judgment has been violated by them (*Smith v. Clothier*, supra).

Having disposed of auxiliary matters involved we now direct our attention to the all-determinative issue raised by the appeal. Appellants state the sole question is, "who is entitled to initiate contempt proceedings to enforce a permanent and perpetual injunction?" Appellees contend it to be "did the judgment of the trial court abate until such time as it was revived by the personal representatives or heirs at law of the plaintiff?" Distinctions in phraseology as used by the parties are of little importance. They agree that, however stated, the question for ultimate decision is whether the appellants under the circumstances and conditions heretofore related were proper parties and had the right to institute contempt proceedings in the original injunction action.

Primarily a determination of the question as stated necessarily depends upon the terms and conditions of the permanent and perpetual injunction decree rendered in the original action which, all must agree, had become final and conclusive. So far as pertinent to our purpose it reads:

"Now Therefore, it is considered, ordered and adjudged by the court that the plaintiff recover of and from the defendants as prayed for in his petition; that there is granted as against the defendants Henry T. Willey and Belle Willey, his wife, their heirs, grantees or assigns, a permanent injunction prohibiting them, and each of them, from digging a ditch through the elevation or bench along the south side of their farm *which legal description thereof is given in the findings of fact herein set out.* . . ." (Emphasis supplied.)

Thus it must be conceded at this point that at the time the motion to quash the citation order was sustained there was of record in the district court of Shawnee county a judgment prohibiting the appellees from digging a ditch through an elevation or bench on certain lands therein specifically described.

Even though a contempt proceeding to punish for violation of an injunction is a part of the original suit it is well to remember that it is summary in nature and *sui generis* in character. The general rule is that such a proceeding may be instituted by an aggrieved party, or his successor in interest or someone who has a pecuniary interest in the right to be protected (17 C. J. S. 79, § 63; 43 C. J. S. 1033, § 271 [c]; *State, ex rel., v. Petteway, et al.,* 131 Fla. 516, 179 So. 666; *Orr, et al., v. Orr,* 141 Fla. 112, 192 So. 466; 13 C. J. 59, § 82; and *Popsicle Corporation v. Pearlstein* [Mo. App.] 168 S. W. 2d 105), and maintained not only against the parties to the original action and persons in privity with them but also against their successors in interest with actual notice and, where the decree in injunction operates both in personam and in rem with respect to specific property, against all subsequent owners, tenants or occupants thereof irrespective of actual notice or knowledge. (43 C. J. S. 1010-1015, § 263; 12 Am. Jur. 407-410, §§ 26, 27; 28 Am. Jur. 505, § 331; *State v. Porter,* 76 Kan. 411, ·91 Pac. 1073; *Gilpin Corporation v. Wilmore,* 100 Colo. 453, 68 P. 2d 34.)

We are, of course, interested merely in the question of who has a right to commence a contempt proceeding. Rarely indeed ·is the right of a party to initiate such action questioned. Nevertheless, it is interesting to note how far the courts have gone in that respect. It has been held that the accusation may be made by a stranger to the proceeding (17 C. J. S. 79, § 63); that it is a matter of no importance who institutes the proceeding since the alleged contemner is not prejudiced in his defense by the particular mode in which the facts are brought to the attention of the court (13 C. J. 60, § 82); that a civil contempt proceeding is a continuation of the original suit and the jurisdiction of the court is as broad as that which sustains the decree (17 C. J. S. 81, § 64); that if the injunction operates in rem and affects the use of realty, an assignee or transferee becomes a successor to the right of the plaintiff (43 C. J. S. 1033, § 271 [c] and *Popsicle Corporation v. Pearlstein,* supra); that the exercise of the power to punish for contempt is not dependent upon the complaint of any of the parties litigant (12 Am. Jur. 430, § 61).

This court came close to a decision of the issue in *State v. Kindseder*, 78 Kan. 679, 97 Pac. 1025, where we held:

"In a proceeding for indirect contempt the affidavit and accusation were not defective because they were verified by a stranger to the injunction suit." (Syl. ¶ 1.)

In *Gale v. Tuolumne County Water Co.*, 169 Cal. 46, 145 Pac. 532, it was held:

"One who acquires property of a plaintiff who has obtained a judgment establishing water rights thereby acquires the rights established by the judgment, and may initiate contempt proceedings for a violation of a perpetual injunction." (Syl. ¶ 4, 145 Pac. 532.)

Another pertinent case, in that it deals with the rights of those who possessed the only private interest in seeing that a court's order was obeyed, is *Pizzolato v. Cataldo*, 202 La. 675, 12 So. 2d 677, where it was held:

"A covenant for drainage of property, which showed on its face that it was executed not only for benefit of then owners of land, but for benefit of land itself, was a 'covenant running with the land,' and hence subsequent owners, who were not owners at time covenant was executed and at time injunction was obtained against party to covenant, could demand that such party be held in contempt for violating provisions of the injunction." (Syl. ¶ 6.)

And said:

"In his return the trial judge denies that the rule for contempt was carried on merely in the name of 'et als.,' and says that he permitted the rule to be prosecuted by those who owned the land and who necessarily had an interest in seeing that the court's order was obeyed." (p. 685.)

It is true an examination of the authorities to which we have referred reveals no case where heirs at law of a deceased plaintiff who had recovered a final and conclusive judgment in the form of a permanent and perpetual injunction, sought to institute contempt proceedings to compel obedience to the requirements of such decree. Apparently the parties found none for they make no reference thereto in their briefs and we confess we have failed to find one in a somewhat extended search of legal treatises, textbooks and decisions. Nearest in point is our own case of *State v. Kindseder,* supra, which, though questioned by appellees as a precedent because of our decisions to the effect a proceeding in contempt for violation of an injunction against maintenance of a liquor nuisance is criminal in nature (*State v. Plamondon,* supra; *State, ex rel., v. Miller,* 147 Kan. 242, 75 P. 2d 239), we deem im-

portant and decisive for the reason the decision there was reached notwithstanding the strict rules of procedure inherent in a proceeding of such character whereas in a civil case—such as we have here—more laxity prevails.

Appellees admit that a judgment of permanent injunction survives to the personal representatives of heirs at law of a deceased plaintiff but in an effort to avoid the effect of the rule as stated urge that an action for injunctive relief is an equitable proceeding and therefore an action *in personam* and not *in rem*. Of course, injunction is an equitable remedy but we do not agree with their conclusion it operates only *in personam*.

Long ago the legislature of this state abolished all distinctions between law and equity (G. S. 1935, 60-201) and our decisions since enactment of the statute dealing with that subject leave no doubt as to the power of a court in an equity proceeding.

In *Minch v. Winters,* 122 Kan. 533, 253 Pac. 578, we said:

"It should not be forgotten that in the simplification of our civil code and the statutory abolition of distinctions between actions at law and suits in equity (R. S. 60-201), the legislature was not engaged in curtailing the essential powers of our courts of general jurisdiction. The legislative purpose was rather to emancipate the courts from those ancient artificialities or procedure which handicapped them in dealing out whatever measure of redress, legal or equitable, justice in any case required. (*Houston v. Goemann,* 99 Kan. 438, 162 Pac. 271, and citations; *Kolbourn v. Sunderland,* 130 U. S. 505; and Rose's notes thereto in 32 L. Ed. appendix.)" (p. 539.)

Similar expressions are to be found in *Drainage District v. Railway Co.,* 99 Kan. 188, 209, 161 Pac. 937; *Farney v. Hauser,* 109 Kan. 75, 198 Pac. 178; *Shawnee County Comm'rs v. Wright,* 153 Kan. 19, 109 P. 2d 184; and *Kelso v. Norton,* 65 Kan. 778, 787, 70 Pac. 896.

That our decisions are in accord with the weight of authority is evidenced by what is said in 19 Am. Jur. 52, § 24:

"The rule that a decree in chancery, unaided by statute, is in personam only and does not execute itself so as to transfer personalty or realty within a state is said to have given way to the paramount rule that equity may in all cases so frame its decrees as to make them effective to do equity. . . ."

See, also, 28 Am. Jur. 505, § 331, where the following statement is found:

"While at one time it was universally recognized that equity acts *in personam* and not *in rem,* this rule has now been changed by statutes in almost all jurisdictions, and equity decrees may in all cases be so framed as to act on property. . . ."

An examination of the original decree clearly reveals it permanently and perpetually restricted the use of the appellees' land therein described under such circumstances that subsequent purchasers were bound by its terms and conditions. To that extent the judgment was *jus in rem* notwithstanding it possessed other features commonly denominated as *in personam*.

Summarizing, since the various sections of our statute prescribing procedure in indirect contempt proceedings do not require that an accusation, complaint or affidavit in contempt be made by a party to the original action and since the judgment as rendered in the original cause here involved was in part *in rem*, we have no difficulty, when proper weight is given to pertinent decisions dealing with the question of who may inaugurate civil indirect contempt proceedings, in concluding that appellants were proper parties to institute the proceeding here involved.

The judgment sustaining the motion to quash is therefore reversed and the cause remanded for further proceedings. ·