Nos. 37,728 and 37,731 Consolidated

STATE OF KANSAS, *Appellee*, v. SAM COLEMAN, BARNEY PORTER and MATTIE WATSON (Intervenor), *Appellants*.

(211 P. 2d 81)

Opinion
filed November 12, 1949.

*Chas. S. Scott,* of Topeka, argued the cause, and *Elisha Scott, Jr.,* and *John J. Scott,* also of Topeka, were with him on the briefs for the appellants.

*Herbert A. Marshall,* assistant county attorney, argued the cause, and *Harold R. Fatzer,* attorney general, *Warren W. Shaw,* county attorney, and *William L. Rees,* assistant county attorney, were with him on the briefs for the appellee.

The opinion of the court was delivered by

ARN, J.: On January 27, 1948, a permanent injunction was issued against the property located at 116 S. Monroe Street, Topeka, Kan., (also described by full legal description) enjoining Sam Coleman and the other defendants and all other persons from maintaining a liquor nuisance thereon. That judgment, docketed in the district court of Shawnee county as case No. 66,203, is final and has not been vacated or modified. Subsequently, the county attorney of Shawnee county was informed that the liquor nuisance was continuing and that a sale of liquor was made upon said premises on March 11, 1949, by the defendant Sam Coleman. Thereupon the county attorney commenced two separate proceedings arising out of and as a part of the aforesaid case No. 66,203. The first proceeding was one in contempt against Sam Coleman to punish him for a willful violation of the injunction, and the second a proceeding for abatement of the nuisance.

After a full hearing upon the contempt proceeding at which the defendant offered no evidence, the trial court on March 18, 1949, found Sam Coleman guilty of violating the terms of the permanent injunction and sentenced him to sixty days in jail and a fine of $200 and costs. Coleman's appeal from that judgment has been docketed here as case No. 37,728.

In the proceeding for abatement of the nuisance, the county attorney included in the "Motion for Abatement" a request for a padlock order. One Mattie Watson, an appellant here, was per-

mitted to intervene and to file an answer. Her answer alleged that she is now the owner of the premises at 116 S. Monroe Street, having purchased the same on March 22, 1948, from Sam Coleman, the appellant herein. She further alleged that she had no knowledge of any law violation at or upon said premises and did not sanction such violations thereon. A trial was had in this abatement proceeding, and the district court found that the permanent injunction of January 27, 1948, had been violated; that Mattie Watson knew of the issuance of said permanent injunction and had notice thereof at the time she obtained the deed to the 116 S. Monroe Street property; that she had a duty to see that said permanent injunction was not violated; and that in order to protect the judgment of the court and to prevent a further violation thereof, a writ of abatement and padlock order should issue. Such writ and order were issued on March 22, 1949, and Mattie Watson and Sam Coleman have appealed. That appeal is here as case No. 37,731, and has been consolidated with the aforementioned appeal of Sam Coleman from the order punishing him for contempt.

Appellants contend first that the judgments of the trial court in both the proceeding to punish for contempt and the proceeding for abatement of the nuisance were contrary to the evidence. There was evidence of a sale of whisky by Sam Coleman at the premises in question on March 11, 1949. The evidence disclosed that defendant Coleman himself received payment for the bottle of whisky by a marked bill and returned the change to the purchaser. The defendant was not a licensed retail liquor dealer under chapter 242, Laws 1949, which had become effective on March 9, 1949. It was conceded that Mattie Watson became the record owner of the premises on March 22, 1948, by a warranty deed from Sam Coleman, her nephew. It will suffice to say that we have examined the record and there was sufficient evidence to support the findings, judgments and orders made by the trial court in both proceedings. The purchase of the premises by Mattie Watson after the issuance of the permanent injunction thereon had no effect upon such permanent injunction which forbade the maintenance of a liquor nuisance. That permanent injunction of January 27, 1948, was in effect an encumbrance upon the use of the property which runs with the land and which is binding upon everyone who then had or thereafter might have any interest in it—and irrespective of their want of notice that the premises had been adjudicated to

be a nuisance. (*State v. Porter,* 76 Kan. 411, 91 Pac. 1073; *State v. Richardson,* 128 Kan. 627, 631, 278 Pac. 752; *State, ex rel., v. Ramsey,* 151 Kan. 764, 767, 100 P. 2d 637.) For a further discussion of this rule as well as a contrary rule existing in some other jurisdictions, see notes in 15 A. L. R. 386-401.

Most of chapter 21, article 21, G. S. 1935, as amended, pertaining to intoxicating liquors, was repealed by the liquor control act (ch. 242, L. 1949), which became effective upon its publication in the official state paper on March 9, 1949. The appellants contend, therefore, that with such repeal, and particularly by the repeal of sections 21-2131 and 2132, G. S. 1935 (proceedings to abate a nuisance and for injunction, penalties, and enforcement) the trial court was without jurisdiction in these instant proceedings. It is true that said sections 21-2131 and 21-2132 provide a procedure for abating and enjoining liquor nuisances, punishing a violation of such injunctions and enforcing them by padlock order or such measures as the court may deem expedient. Those sections were repealed as of March 9, 1949, and the alleged illegal sale which was the basis for these instant proceedings was made two days later—on March 11, 1949. But independent of statute, our district courts have an inherent power to punish for contempt of court and to make such reasonable orders as are necessary to protect and preserve their judgments. (*State v. Marshall,* 95 Kan. 628, 630, 148 Pac. 675; *In re Hanson,* 80 Kan. 783 [Syl. ¶ 1], 105 Pac. 694; *In re Gambrell,* 161 Kan. 4, 7, 165 P. 2d 760.) It is also suggested that other statutes grant authority for the proceedings instituted here (secs. 20-1204, 60-1121, G. S. 1935; *State v. Rabinowitz,* 85 Kan. 841, 118 Pac. 1040).

The permanent injunction of January 27, 1948, enjoined *all persons from violating or permitting the violation of the liquor laws* at 116 S. Monroe Street. A sale of liquor by any person other than a regularly licensed dealer was just as much a violation under the new law as under the old bone dry law. Such a sale was just as illegal on March 11, 1949, as it was prior to March 9, 1949. Furthermore, the legislature in enacting the liquor control act (ch. 242, L. 1949) anticipated there would be orders, judgments and decrees from previously pending cases such as the permanent injunction issued herein on January 27, 1948, and the repealing clause (sec. 115 of said ch. 242) was made to provide:

"That this repeal shall in no wise affect any . . . order, judgment,

decree . . . or proceeding made, entered or had under any of the provisions of the sections repealed, nor shall this repeal in anywise affect any criminal prosecution heretofore commenced, or any fine, penalty, forfeiture or punishment for any felony, misdemeanor or offenses committed before the taking effect of this act, prosecution for which shall be carried on and continued in the manner provided by law, the same as if this repeal had not been made. . . ."

The obvious effect of this section 115, as applied to this case, is to provide that the permanent injunction of January 27, 1948, shall not be affected by the repeal of March 9, 1949. The general purpose of section 115 was to provide for an orderly transition from one procedure to another without affecting existing judgments, decrees and orders made by the courts in liquor cases. The new liquor law also provides that any premises where liquors are kept for sale or sold in violation of law, constitute a common nuisance (sec. 94); and provision is made for temporary and permanent injunction, abatement and padlock (sec. 95). In fact, the new liquor control act makes a padlock order mandatory upon the issuance of an injunction without waiting for a violation of the injunction as under the former law.

The provisions of the old law and the new one with reference to injunctions, abatement and padlock are basically the same. When that situation prevails, it is the expressed intention of the legislature of this state to treat a new statute as a continuation of the old one whenever possible. Such rule of construction is stated in section 77-201, G. S. 1935, as follows:

"The repeal of a statute does not revive a statute previously repealed, nor does such repeal affect any right which accrued, any duty imposed, any penalty incurred, nor any proceeding commenced, under or by virtue of the statute repealed. The provisions of any statute, so far as they are the same as those of any prior statute, shall be construed as a continuation of such provisions, and not as a new enactment."

The foregoing section of the statutes applies to criminal cases (*In re Schneck*, 78 Kan. 207, 209, 96 Pac. 43).

As we have said, the trial court had jurisdiction in the instant case to punish for contempt and to issue the padlock order independent of chapter 21, article 21, G. S. 1935, because of other statutes and because of the inherent powers of the court—and it also had such jurisdiction because the saving clause in section 115 of the new law contemplates the enforcement of court orders, decrees and judgments made prior to the effective date (March 9,

1949) of the new liquor control act. It would have been too much to expect that all violations of every permanent injunction issued under the old law would cease the moment the new act took effect, so the legislature took care to enact this saving clause embodied in section 115.

In the transition of passing from sixty-eight years of constitutional prohibition to regulated liquor control under chapter 242, Laws 1949, it was the purpose of our recent legislature to take every possible precaution to stop the illegal sale of, and traffic in, intoxicating liquors—both by those who flouted the old law and those who may wish to violate the new one. The courts from time to time will have occasion to construe this new act as well as the legislative intent behind its enactment, and in so doing, should not lose sight of the aforesaid purpose which our legislature desired to accomplish by its attempted regulation of this intractable commodity.

Some mention is made in the briefs before us that under section 95, chapter 242, Laws 1949, the "padlock period" shall be not less than three months nor more than two years, and until the owner shall post a $1,000 bond conditioned that the law will not be violated for two years thereafter. In the instant case the "padlock order" was to continue "until the further order of the court." The owner of the padlocked premises may be entitled to have the "padlock order" modified in harmony with section 95 of chapter 242, upon proper application, but that matter was not brought to the attention of the trial court and consequently will not be reviewed on appeal.

The judgment is affirmed.